## SARAH J. GREENE et al., Respondents, v. IRVING DAVIS, Appellant.

### Kansas City Court of Appeals, June 4, 1906.

1. **ADMINISTRATION: Gifts: Legal Title.** When an attempted gift is incomplete, leaving the legal title in the grantor at the time of his death, such title passes to the estate and not to the beneficiary in the attempted gift.

2. **INTERPLEADER: Administration: Interest of Interpleader.** A bill of interpleader cannot be maintained by one who has an interest in the subject of the controversy or denies the title of either of the claimants or lends his aid in the establishment of a claim or instigates a contest for the fund in his possession. The interpleader himself must be neutral between the conflicting claimants. And so where one instigates an administration and becomes surety for the administrator he cannot, when sued on a note by the endorsee of the decedent, maintain a bill of interpleader between the endorsee and such administrator.

Appeal from Putnam Circuit Court.—*Hon. George W. Wannemaker, Judge.*

AFFIRMED.

*Wilson & Clapp* for appellant.

(1) An interplea may be made by answer. Roselle v. Bank, 119 Mo. 84; Sullivan v. Knights of Father Matthew, 73 Mo. App. 43. (2) The amended answer in this case stated a good interplea. Moreover no objection was made to the sufficiency of that answer in the trial court, neither was objection made to the introduction of any evidence under it. Atkinson v. Carter, 101 Mo. App. 477; Woodmen of the World v. Wood, 100 Mo. App. 655; Funk v. Thomasson, 84 Mo. App. 490. (3) The defendant had and claimed to have no defense to the note. Under the order of the circuit court and after he had filed his amended answer he paid the money into court. The plaintiffs filed their reply to this amended answer, and acted on it as if that answer was sufficient. Heusner v. Insurance Co., 47 Mo. App. 336. (4) There was no collusion between the defendant and the administrator. The evidence shows directly to the contrary. As soon as he heard that the plaintiffs were claiming that the note had been delivered to them by their father in his lifetime the defendant filed his amended answer and asked that the rival claimants to the note be made to interplead therefor. (5) The plaintiffs had no color of title to the note under the contract. By its express terms the contract provided that C. J. Davis was to retain possession and full use and control of the note until his death. And the plaintiffs were not to take possession of it until after his death. By operation of law this note, on the death of C. J. Davis, went to his administrator and not to the plaintiffs, and they could acquire title only through administration. Jacobs v. Maloney, 64 Mo. App. 270, and cases there cited; Tye v. Tye, 88 Mo. App. 330. (6) Fraud will not be presumed, and when it is alleged, must be proved. Hardwicke v. Hamilton, 121 Mo. 465; Warren v. Ritchie, 128 Mo. 311; Halderman v. Stillington, 63 Mo. App. 212. (7) There was

no evidence in this case of a conspiracy between the defendant and the administrator. All the evidence on the contrary went to show that there was no conspiracy or collusion between them.

*N. A. Franklin* and *B. L. Robison* for respondents.

(1) A plaintiff in a bill of interpleader must not have lent himself in any way to further the claim of either party to the fund in controversy, or to aid one in obtaining possession thereof to the exclusion of the other; he must not have brought about contesting claims for the purpose of filing his bill; he must be entirely indifferent between the conflicting interest. It is essential to his sustaining the bill that he is threatened with or is in danger of two or more suits being prosecuted against him for the same fund or thing. Hartsook v. Chissman, 90 S. W. 116; Swain v. Bartlett, 82 Mo. App. 642; Arn v. Arn, 81 Mo. App. 133; Marvin v. Ellwood, 11 Paige (N. Y.) 365; Juinn v. Patton, 2 Ired. Eq. (37 N. C.) 48; Wing v. Spaulding, 64 Vt. 83; Groves v. Sentell, 153 U. S. 465; Wells v. Miner, 25 Fed. Rep. 533; 2 Ency. Plead. and Prac. 458-9; Story, Equity Pleading (9 Ed.), secs. 297, 297a; Hayman v. Cameron, 46 Miss. 725; Pomeroy's Equity Juris. (3 Ed.), secs. 1320-1322-1325; Cogswell v. Armstrong, 77 Ill. 139; Hathaway v. Foy, 40 Mo. 540; Tiedeman's Equity Jurisprudence, secs. 570-573; McHenry v. Hazard, 45 N. Y. 580; Hellman v. Scheider, 75 Ill. 422; Moore v. Usher, 7 Sim. 383; Greene v. Mumford, 4 R. I. 313; Patterson v. Perry, 14 How. Pr. 505; Supreme Council v. Palmer, 107 Mo. App. 157. (2) Defendant did not take the stand to show that the administrator either claims the proceeds of the note or that he is in any way claiming the fund in controversy nor does he call on the administrator to testify. These two men of all others could have explained their relation to the transaction. Not having done so the defendant must accept the usual unfavorable presumptions.

Ins. Co. v. Smith, 117 Mo. 294; Stephenson v. Kilpatrick, 166 Mo. 269; Henderson v. Henderson, 55 Mo. 559; Cass County v. Green, 66 Mo. 512; Goldsby v. Johnson, 82 Mo. 605; Leeper v. Bates, 85 Mo. 228; Baldwin v. Whitcomb, 71 Mo. 658; Mabry v. McClurg, 74 Mo. 591.

JOHNSON, J.—Action on a promissory note. The amended answer on which the case was tried is in the nature of a bill of interpleader. The issues presented by that answer and plaintiffs' reply thereto were decided adversely to defendant; judgment was entered in favor of plaintiffs on the note and defendant appealed.

On October 20, 1903, defendant executed and delivered to Clara Davis his negotiable promissory note of $400, payable on or before one year after date. Before maturity the payee sold and transferred it to C. J. Davis and endorsed it as follows: "For value received I assign the within note to C. J. Davis, Clara Davis." After this and before maturity, C. J. Davis delivered it to plaintiffs with this endorsement: "For value received I assign the within note to Sarah J. Greene and Samantha E. Piercy, C. J. Davis." On June 28, 1904, while he was the holder of the note and before he assigned and delivered it, Mr. Davis entered into a contract in writing with plaintiffs (his daughters) whereby in consideration of past services and of their agreement to "pay all of his funeral expenses, doctor bills for his last sickness," etc., he declared that, "I, Cebern J. Davis,   .   .   .   hereby give, grant and assign to them (his daughters) all of my property of every name and nature including personal effects, moneys and certificates of deposits, notes and other property of which I am now seized or which I may own at the time of my death, I to retain possession and full use and control of all my said property until my death. That my said daughters to take possession of as their own of all my property immediately after my death." He died July 19, 1904, and on or about October 13th following

George W. Davis was appointed administrator of his estate by the probate court of Putnam county. Defendant signed the administrator's bond as surety. The petition in this suit was filed October 25th. The original note bearing the endorsements above mentioned was attached to it as an exhibit and plaintiffs alleged that "on the —— day of July, 1904, said C. J. Davis for value received sold and transferred said note to these plaintiffs and they are now the legal owners and holders of the same."

In his original answer, filed November 28th, defendant (a son of C. J. Davis) admitted the execution and delivery of the note and its assignment before maturity to C. J. Davis; denied its transfer to plaintiffs and its ownership by them, and alleged "that by operation of law the title to said note passed to and became vested in the said administrator and that he alone has the right to sue and recover on said note." Defendant also filed a motion that plaintiffs be required to give security for costs and pressed it to a determinination.

On November 30 defendant filed his amended answer. In that pleading he admits "that the said note is past due and that he owes the same," but avers that "the said administrator ever since his appointment has been and is now demanding the payment of the same to him as administrator . . . has always claimed and still claims that the said C. J. Davis never assigned or transferred the said note to plaintiffs and that at the time of his alleged assignment to them the said C. J. Davis was incapable of transacting his business or of managing his affairs and if any such transfer or assignment was in fact made, the same was obtained through fraud and undue influence." He then avers his willingness "to pay the said note to whomsoever it of right belongs" but "is in doubt as to whether the same should be paid to plaintiffs or the administrator." He prays "that he may be allowed to bring the amount due on said note into court" and that the administrator "be made to

interplead therefor." He was permitted to pay the money into the registry of the court.

Plaintiffs in their reply in effect charge that all of the steps taken by defendant in relation to this suit were the result of collusion between him and the administrator, who, it is alleged, "have at all times since the institution of this suit had a full, complete and perfect understanding with each other and have been and are conspiring together to defeat the plaintiffs out of the proceeds of said note."

One of defendant's attorneys testified that when he prepared and filed the motion for costs and the first answer, he did not know of the endorsement and delivery of the note to plaintiffs by decedent, but, supposing that he retained the possession and ownership of the note to the date of his death and that the title asserted by plaintiffs was founded upon the written contract they had with their father, advised defendant that the legal title to the note passed from decedent to the administrator of his estate and consequently plaintiffs could not maintain their action. After filing the answer, witness chanced to meet the attorney, who had drawn the contract, and was informed by him of the fact that the note itself had been transferred by endorsement to plaintiffs. He then advised his client to file a bill of interpleader. It is worthy of note that this attorney prepared and persented the application for the appointment of the administrator. Neither defendant nor the administrator testified and plaintiffs offered no testimony bearing on the subject of the good faith of defendant in filing his bill.

After the court dismissed the bill, defendant refused to plead further and this colloquy occurred. "By Mr. Franklin (counsel for plaintiffs): Will you admit this is the signature of C. J. Davis?" "By Mr. Wilson (counsel for defendant): I don't know anything about it." Mr. Franklin: "Show it to your client. I can swear to it but don't want to." Mr. Wilson: Mr. Irving Davis (defendant) says it is not like his father's signa-

ture the way it used to be, whether his signature just before his death or not he doesn't know." Mr. Franklin then testified that the name signed to the indorsement was in the handwriting of Mr. C. J. Davis and the statement was suffered to go unchallenged by defendant.

The conduct of defendant exhibited in the facts detailed clearly betrays a fixed purpose to defeat the object expressed in the written contract. As an heir of the grantor, he had a pecuniary interest to serve. The appointment of an administrator was a preliminary step to an attack on any claim of plaintiffs based on the contract and defendant participated in, if he did not wholly instigate this initial movement.

The right to an administration in the face of a contract that attempted to give all of his father's property to plaintiffs was predicated on the assumption that the contract by its terms does not show a gift either *inter vivos* or *causa mortis* and that as the legal title to the property was vested in the grantor at the time of his death it passed by operation of law to his estate and not to plaintiffs as the beneficiaries of the contract. This view finds support in the case of Tye v. Tye, 88 Mo. App. 330, and in the authorities there cited.

With the legal title to the property vested in the administrator, defendant expected to destroy the efficacy of the contract by showing that its execution by the grantor was the result of undue influence exerted over him by plaintiffs when he was incapable of transacting business. The success of such effort would clear the way for defendant to share in the distribution of the estate. It is not necessary to look beyond the pleadings and record evidence in reaching a correct understanding of the attitude of defendant towards the claim of plaintiffs asserted in this action. Admitting that he owed the debt, he actively contested plaintiff's title to it, assisted in the procurement of an adverse claimant and espoused his claim.

A bill of interpleader cannot be maintained by one who has an interest in the subject of controversy. [Hathaway v. Foy, 40 Mo. 540; Hartsook v. Home & Chrissman, 90 S. W. 116, 114 Mo. App. 558; Groves v. Sentell, 153 U. S. 465.] Nor by one who denies the title of one of the claimants, lends aid to another in the establishment of his claim, Marvin v. Ellwood, 11 Paige 365, or instigates a contest for the fund in his possession, Swain v. Bartlett, 82 Mo. App. 642.

He, who invokes this form of relief, must stand in the position of a neutral between conflicting claimants, who is in danger of being drawn into a controversy in which he has no concern save as an impartial stakeholder. A manifestation of partisanship for one or hostility to another claimant is incompatible with a position of neutrality and therefore destructive of an essential element of the right to relief. [Arn v. Arn, 81 Mo. App. 133; Wing v. Spaulding, 64 Vt. 83; Wells v. Minor, 25 Fed. 533; Cogswell v. Armstrong, 77 Ill. 139; Patterson v. Perry, 14 How. Pr. 505; Greene v. Mumford, 4 R. I. 313; 3 Pomeroy's Eq. Juris., sec. 1325; Tiedeman on Eq. Juris., sec. 570; 11 Ency. Pl. & Pr., 458; Story's Eq. Pl. (9 Ed.), sec. 297.

Counsel for defendant say that his opposition to the enforcement of plaintiffs' claim ceased when he learned of the fact that his father had endorsed and delivered the note to plaintiffs and thenceforth his conduct was wholly impartial and disinterested. It devolved on defendant to show affirmatively that his attitude was that of a disinterested stakeholder. Very pertinent is this excerpt from the the opinion of Judge ELLISON in Swain v. Bartlett, supra:

"The whole theory upon which an interpleader is allowed is that the claims against the plaintiff have been made against him without his procurement (Belcher v. Smith, 9 Bing. 82) and without collusion with either claimant. Indeed, an oath to that effect is, in many jurisdictions, required of him. In this case, Bartlett him-

self brought the rival claim into existence by voluntarily going into the probate court and having an administrator appointed to the end that there might be contested claims. He brought his trouble upon himself."

Defendant has failed to establish his neutrality. Manifestly, his purpose now is the same as it was at the beginning — to use an administration as the instrument to defeat plaintiffs' claim and thus advantage himself. Charged with collusion in plaintiffs' reply and burdened with the duty to show impartiality between rival claimants, he failed to testify, though present in court during the hearing, but relied on his attorney's want of knowledge of an important fact as an excuse for the open fight he made on plaintiffs' title and even refused to identify his own father's signature to the endorsement on the note. All of the facts convince us, as they did the learned trial judge, that defendant, notwithstanding the averments of his amended answer is yet engaged in waging war on plaintiffs' title and this he cannot do in the guise of a disinterested stakeholder.

The judgment is affirmed.

All concur.