H. H. REYNOLDS, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, March 1, 1909.**

1. **STREET RAILWAY: Negligence: Splitting Switch: Injury to Bystander: Evidence: Burden.** Burden is on plaintiff to prove one or more of the specific acts of negligence he alleges and the evidence relating to the splitting of a switch by a street car in passing from one track on a curve into another whereby a bystander was injured by the rear end of the car being thrown against him is reviewed and held sufficient to send the issues of care of the motorman, the defective switch and the negligence of the switchman to the jury, notwithstanding the rule if an injury may have resulted from one or two causes, the defendant being liable for one and not for the other, plaintiff must show with reasonable certainty that the one cause and not the other produced the result.

2. ———: ———: ———: ———: ———: **Contributory Negligence.** *Held*, further, that on the evidence plaintiff cannot be declared as a matter of law, guilty of contributory negligence.

3. ———: ———: ———: ———: ———: **Populous Place.** *Held*, evidence relating to the place of the injury being a busy part of the business district of a city is properly admitted although no averment of the kind appears in the petition.

4. ———: ———: ———: ———: ———: Unchanged Condition. It is proper to admit the evidence of a party who viewed the situation of the tracks and switches four hours after the accident where it appears the condition was then the same as at the time of the accident.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*John H. Lucas, Ben T. Hardin* and *C. L. Botsford* for appellant.

(1) The questions with reference to the number of people that cross and are on the streets and crossings at the point of accident, and the answers that it was a populated portion of the business district and a great many people travel about there, was immaterial and inadmissible. Objection thereto should have been sustained and the error was material. The same was not pleaded. 14 Ency. Pleading and Practice, pp. 331, 332, notes 1, 2 and 3, p. 332; Gurley v. Railway, 93 Mo. 445; Lee v. Hame, 6 Mo. App. 578; 29 Cyc., p. 565; Laforest v. O'Driscoll, 26 R. I. 547. (2) It was error to permit the witness, Bird, to testify as to the condition of switch at noon, over four hours after the accident, without any evidence that it was in the same condition as at time of accident. Gutridge v. Railroad, 105 Mo. 520; Weldon v. Railroad, 93 Mo. App. 668. Plaintiff failed to make out a case by the testimony and the demurrer to plaintiff's evidence and the request to instruct the jury to return a verdict for defendant ought to have been sustained and granted. The evidence shows that the accident in question might have resulted from one of several causes, to-wit: The negligence of the motorman cannot be charged against defendant. He was the agent and servant of the Kansas City Elevated Railway Company, who

owned and operated this Quindaro car.   Young v. Railway, 113 Mo. App. 636; Smart v. Kansas City, 91 Mo. App. 586; Browning v. Railway, 106 Mo. App. 729; Fuchs v. St. Louis, 167 Mo. 620; Candle v. Kirkbride, 117 Mo. App. 412; Warner v. Railroad, 178 Mo. 125; Dunphy v. Stock Yards Co., 118 Mo. App. 506; Trigg v. Land & Lumber Co., 187 Mo. 227; Harper v. Terminal Co., 187 Mo. 575; M'cGrath v. Transit Co., 197 Mo. 97; Hornstein v. Railway, 97 Mo. App. 271; Harrington v. Brockman Com. Co., 107 Mo. App. 418; Bartley v. Railway, 148 Mo. 124; Purcell v. Transit Co., 187 Mo. 276; Lee v. Jones, 181 Mo. 291.

*Harkless, Crysler & Histed,* for respondent, submitted argument.

JOHNSON, J.—Plaintiff was struck and injured by an electric car operated on one of defendant's street railway tracks in Kansas City, and alleges that his injury was caused by the negligence of defendant.   The answer was a general denial and a plea of contributory negligence.   The cause was tried to a jury and is before us on the appeal of defendant from a judgment in the sum of one thousand dollars.

The injury occurred shortly before eight o'clock in the morning of March 31, 1906, at the intersection of Main and Tenth streets in the central part of the business district of Kansas City.   Main street runs north and south, Tenth street east and west.   There is a break in the continuity of the latter street at this crossing, to the extent that the sidewalk on the south side of Tenth street east of Main street is about on a line with the sidewalk on the north side of the street west of Main street.   Defendant maintains a double-track street railway on Main street and a single track road on Tenth street which is curved to conform to the jog in the street.   Switches are maintained at the intersection to enable some cars coming from the west on

Tenth street to turn northward on Main street, some
to turn to the south and others to go on east.  This is
a very busy corner and a switchman is stationed there
by defendant to throw the switches for passing cars.
All the tracks are owned by defendant, but at the time
of the injury only part of the cars using them was op-
erated by defendant.   Others were operated by other
corporations under some arrangement with defendant,
the nature of which is not material to the present in-
quiry.

Plaintiff, who was sixty-seven years old, walked
west on the sidewalk on the south side of Tenth street
and when he reached Main street, started to cross over.
He observed the car at the switch which had come from
the west on Tenth street and was about to turn to the
north.   When at a point about ten feet from the curve
and five or six feet outside the range of the car making
the turn, he stopped in the street for the car to go by.
The front wheels passed over the switch on to the curve,
but the rear wheels passed on to the track running
east, with the result that the rear of the car swung to
the east a sufficient distance to collide violently with
plaintiff and injure him.

Thus far, there is no serious controversy over the
facts.  The switch, at the beginning of the curve around
which the car attempted to go, consisted of a metal
"tongue" on the north side of the track and a "mate"
in the south rail.  The tongue was pivoted at one end
to permit its free end to be moved by the switchman.
In one position, it connects the track on west Tenth
street with the curve around the corner into Main
street, and in the other position, it connects that track
with the track going east on Tenth street.  All of the
evidence is to the effect that the tongue was shifted by
the watchman to throw the car around the curve and
that the front trucks properly entered the curve.  The
cause of the deflection of the rear wheels from their in-
tended course is the main subject of controversy.  It

is the theory of plaintiff that they "split the switch" which is to say that when the front trucks passed over, the free end of the tongue moved enough for the rear wheels to strike it in a way to throw the tongue into position to form a continuous rail with the track going east. Four negligent causes for this result are alleged in the petition, as follows:

1. "That the defendant negligently and carelessly maintained and operated said switch rail in a worn and defective condition in that the said switch rail and the point thereof were so worn away that the said wheels or trucks did not stay upon said switch, but ran or slipped over the same and left their intended and destined course; and that the switch and switch appliances were maintained in an insecure condition, in that it was not wedged or braced to prevent its moving.

2. "That the defendant's agents, servants and employees then and there running and operating said car, caused the same to be run around said curve at a high and dangerous rate of speed, knowing the grade thereof to be steep, and the curve acute and abrupt, and then and there knowing, or, by the exercise of ordinary care on their part they should have known that the switch rail at said point was so worn in the particulars hereinbefore stated as that the said car and the hind trucks thereof might be thrown from said track.

3. "That the said agents, servants and employees operating said car, (and) at or about the time the rear trucks struck said switch rail in said curve, negligently and carelessly, suddenly and with great force applied the power to said car and caused the said car to be jerked forward rapidly and with such force as to throw the said hind trucks from the curved tracks and from their accustomed and intended course.

4. "That the said defendant's agents, servants and employees operating said car, and the switchman stationed at said point knew, or, by the exercise of ordinary care, might have known, that the said rear trucks had

left said switch in time to have stopped the car before it was projected eastwardly and against this plaintiff, but carelessly and negligently failed and neglected so to do."

First, we shall dispose of the question involved in the insistence of defendant that the court should have granted its request for a peremptory instruction to the jury. In approaching the curve, the car was going down grade. There is evidence in the record introduced by plaintiff that the car was run on to the switch at a negligently high rate of speed and that the motorman applied more power while the front trucks were on the switch. But it was developed afterwards that the car was not owned or operated by defendant, but was being operated by another corporation and that the motorman was not the servant of defendant. About this fact, there is no dispute, and it is conceded by plaintiff that he cannot recover on account of the negligence of the motorman. There is no evidence to sustain the fourth allegation of negligence in the petition and the scope of our inquiry is reduced to the proposition of plaintiff's right to go to the jury on the issue that the defective switch and the negligence of the watchman in failing to block it were the proximate causes of the injury. No eyewitness of the occurrence was looking at the switch and there is no direct evidence of a "split switch" but the circumstantial evidence that the point of the switch was moved by the passage over it of the front wheels is very strong. None of the wheels jumped the track, those in front remained on the curve, those behind passed on to the east-bound track. Obviously, from this, the inference is reasonable that the tongue must have served as a part of the rail for both sets of wheels, for such connections could not have been made by any other agency, and that this double connection must have been formed by the movement of the switch point caused by the force exerted by the front wheels in passing over, or by the reaction from that force.

The contention of defendant that the introduction into the switch groove of some foreign body, such as a stone or pebble, might have caused the deflection, cannot be seriously entertained. There is no evidence that anything of that kind occurred, and it is unbelievable that a body of sufficient hardness to turn the wheels would not have left some trace of its presence. Defendant argues that the evidence of plaintiff leaves the cause of the injury in the realm of conjecture and relies to some extent on the point being discussed to support its argument. We have no right to resort to speculation or conjecture to aid the theory of either party and we regard this feature of defendant's argument, unsupported as it is by evidence, as entirely speculative.

The testimony of one of plaintiff's witnesses tends to show that the switch tongue was so battered and worn that it was in a defective condition and it is a fair conclusion from all the facts and circumstances disclosed that the switchman did not block the switch, though he states he did block it. The witness to whom we refer was shaken somewhat on cross examination and facts were brought out which might serve to cast a doubt on his credibility and the accuracy of his knowledge. But we think his evidence is substantial and, therefore, the weight to be given it, as well as the question of his credibility, were issues to be solved by the triers of fact. In passing on the demurrer to the evidence, we must take him and his testimony at par. With evidence adduced by plaintiff tending to show that the car was thrown out of its course by one or more of three acts of negligence, viz.: that of the motorman in the handling of the car; that of defendant in maintaining a defective switch, or that of defendant's switchman in failing to block the switch, let us see if the jury were compelled to reach their verdict by guess work or conjecture.

The doctrine of *res ipsa loquitur* is not invoked by plaintiff, nor has it any application to the facts of this

case. The burden is on plaintiff to prove that one or more of the specific acts of negligence alleged in his petition produced the injury. [McGrath v. Transit Co., 197 Mo. 97.] "If the injury may have resulted from one of two causes for one of which and not the other defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result and if the evidence leaves it to conjecture, the plaintiff must fail in his action." [Young v. Railway, 113 Mo. App. 636, and cases cited.] "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to be established by legitimate proof." [Smith v. Bank, 99 Mass. 605.]

The proper application of these rules to the case in hand does not lead us to hold that plaintiff has failed to sustain his burden of proof. It was not incumbent on him to establish the existence of his cause of action against defendant by direct evidence. If he has adduced facts and circumstances from which a reasonable inference arises that one or more of the specified acts of negligence on the part of defendant was the direct cause of his injury, he has discharged his burden and was entitled to go to the jury. Though the evidence does show that the motorman handled the car in a reckless manner, it also strongly indicates that his negligence had little, if any, effect in the production of the injury. The physical facts, we think, justify the opinion expressed by the principal expert witness of defendant in the following excerpt from his testimony: "Q. If this switch is all right would the acceleration of the speed of the car be likely on that curve to run the hind truck off—could that be done? A. I don't think so. I think that would not occur on account of the acceleration of the speed of the car. There has got to be something else to produce a split switch besides going at a certain

speed. That is an outside curve and has a good, large radius."

If the switch had been in good condition and properly blocked, it is more reasonable to believe that a reckless acceleration of speed would have caused the wheels to leave the track instead of splitting the switch. The jury were entitled to consider these things and to find that the splitting of the switch resulted solely from the defective condition of the switch tongue and the absence of the block—acts of negligence for which defendant is liable, and not from the negligence of the motorman for which defendant is not liable. Such conclusion appears as a fair and reasonable deduction from all the facts and circumstances in evidence and, therefore, in no sense should be regarded as merely conjectural.

Further, defendant contends that plaintiff should be declared guilty in law of contributory negligence. We do not think so. He was on a street crossing where he had a right to be and stopped a safe distance from the track had the car not been deflected. The quickness of that occurrence, which was one he had no reason to anticipate, gave him no opportunity to escape. His evidence demonstrates that he acted in the manner of an ordinarily careful and prudent person, and we perceive no reason for holding him culpable in law. The demurrer to the evidence was properly overruled.

There is no merit in the point of defendant that the court erred in overruling its objection to testimony to the effect that the place of injury was in a busy part of the business district of the city. The ground of the objection was that "there is nothing in the petition about its being thickly populated." The fact was not constitutive but evidentiary and, consequently, it was not required of plaintiff to plead it in order to prove it. Besides, the evidence of defendant discloses that the place, not only was in the heart of the city, but was one of the principal focal points of its railway system.

Nor do we agree with defendant that "it was error to permit the witness Bird to testify as to the condition of the switch at noon, over four hours after the accident, without any evidence that it was in the same condition as at the time of the accident." All of the evidence including that of defendant, is to the effect that the condition of the switch remained unchanged for a long period of time and defendant laid stress on the fact that it continued to use the switch. Paraphrasing what was said by the Supreme Court in Swadley v. Railway, 118 Mo. l. c. 279: The limitation to such evidence is that it must be such in character and point of time as to justify the inference that the switch was in a defective condition at the time of the accident. With all the witnesses agreeing that the switch remained in the condition it was in at the time of the injury, the evidence in question complies with the rule above stated and was admissible.

Other objections to the rulings of the court in the admission of evidence are found to be not well taken. The cause was fairly tried, the instructions correctly expounded the law of the case, the verdict is supported by substantial evidence, and it follows that the judgment must be affirmed. It is so ordered. All concur.