Samuel M. LEWIS and Minnie B. Lewis, husband and wife, Plaintiffs-Appellants,

v.

Mary M. HUBERT and Ben O. Haskell, Defendants-Respondents.

No. KCD 27064.

Missouri Court of Appeals, Kansas City District.

Dec. 31, 1975.

Motion for Rehearing and/or Transfer Denied Feb. 9, 1976.

Application to Transfer Denied March 8, 1976.

---

Jerome W. Seigfreid, Edwards, Seigfreid, Runge & Hodge, Inc., Mexico, for plaintiffs-appellants.

Scott O. Wright, Brown, Wright, Willbrand & Burditt, Columbia, for defendant-respondent Mary M. Hubert.

Hamp Ford, Jones, Knight & Ford, Columbia, for defendant-respondent Haskell.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

SHANGLER, Judge.

This action for damages comes in two counts and arises from an intersection collision. Count I is a claim by Minnie B. Lewis against Mary M. Hubert, her host driver, and Ben O. Haskell, the other driver. Count II is a claim by Samuel M. Lewis for the loss of the consortium of his wife. The jury awarded Minnie B. Lewis $5000 against the defendant Hubert but found for the defendant Haskell. The jury found against the husband on his claim for loss of consortium.

On this appeal, the plaintiffs claim that numerous trial errors resulted in an inadequate award of damages for the wife and the denial of recovery to the husband.

The incidents of the event are not in dispute. The collision occurred during the forenoon of March 22, 1969, at the intersection of State Highway 22 and Allen Street in Centralia, Missouri. The plaintiff was a passenger in the automobile driven north on Allen Street by her sister-in-law, the defendant Hubert. That movement was governed by a stop sign. As she approached Highway 22 at from 10 to 15 miles per hour, Ms. Hubert [who had traveled that way many times before] was aware of the intersection and the traffic sign but because of cars parked along the shoulder of Allen Street and beyond the corner to the east, her view was hampered, and so continued at undiminished speed into the intersection and collision without prior stop or sight of the Haskell car. She was charged with careless and reckless driving to which she entered a plea of guilty.

The defendant Haskell was westbound on Highway 22 at between 35 and 40 miles per hour. He was about 50 feet from the inter-section when he first saw the Hubert car in motion in the vicinity of the stop sign on Allen Street. Haskell then realized the Hubert car would not comply with the traffic stop, so he applied his brakes, swerved to the right, but did not avoid an impact. The Haskell front came into collision with the Hubert right front wheel. Haskell did not sound his horn; he contended there was no time. At impact, each car was travelling 10 to 15 miles per hour. Haskell estimated that two seconds elapsed between his first sight of the Hubert car and the collision. This evidence was confirmed by two witnesses.

The plaintiff Minnie Lewis was past her 72d birthday at the time of the casualty. She had no memory of the collision; but her last recollection was her presence in the Hubert car some distance south of the highway.

The chief of police of the municipality, H. F. Smith, was called to the scene. He found both women lying on the highway pavement, where they had been thrown by the impact. He marked the debris from the collision at six feet north of the centerline of Highway 22. The Haskell car had laid down 27 feet of skid marks. His investigation concluded that the stop sign was visible to a northbound driver notwithstanding cars parked along the east shoulder of Allen and beyond.

The plaintiff Minnie Lewis claimed multiple injuries from the accident, including a recurrent facial melanoma and other disabilities. The defendants concede injury, but limited to a cerebral contusion, hematoma on the right side of the face and fractures of the seventh and eighth ribs on the right side.

■ A preliminary contention for review is that the trial court improperly overruled the motion of plaintiffs for directed verdict against the defendant Hubert in the face of evidence of negligence uncontroverted and absence of proof that appellants were con-

tributorily negligent. The error assigned in the motion for new trial recites: The Court erred in refusing to grant plaintiffs' motion for directed verdict against Defendant Mary M. Hubert. That motion was submitted to the trial court without argument or elaboration and summarily denied. The respondent Hubert contends that such a scant allegation of error, without a definite objection either at the trial or on the motion for new trial, violates the governing rules and preserves nothing for review. We deny review of the point on that basis.[1] *Beyer v. Pick*, 428 S.W.2d 1, 3 (Mo.App. 1968); Rules 78.07 and 78.09.

The salient assertion of the plaintiffs is that they are aggrieved because the judgments, which returned inadequate damages to the wife and denied them altogether to the husband, was the result of a jury bias induced by evidence of income erroneously received and evidence of treatment and care expense erroneously excluded.

One of the elements of the damages claimed by plaintiff Minnie Lewis was that her collision-induced injuries prevented her from baking cakes, an avocation she practiced for thirteen years at a gross profit of $150 per week. On cross-examination the defendant Hubert undertook to impeach this claim of loss:

Q. Now, Mrs. Lewis, you didn't show anything on your income tax returns for sale of these cakes, did you?

A. No.

Q. Your income tax returns, you filed a joint return with your husband?

A. Yes.

Q. Your return for 1971___

MR. SIEGFRIED [Counsel for plaintiff]: Just a minute. We object to this.

The return is the best evidence. I don't know what Mr. Wright is attempting to show.

THE COURT: Well, the objection will be overruled. I haven't heard the question. Ask your question, Mr. Wright.

[Proceedings followed outside the hearing of the jury.]

MR. SIEGFRIED: If the question turns out, "Your income tax shows"—and I take it there is going to be a figure here with regard to income and I think that the best evidence would be the return itself so that we would have some knowledge of what counsel is going into on the return.

THE COURT: Well, the objection will be overruled, until I hear the question.

. . . . .

Q. And in your joint return for 1971 it shows gross income of $19,768.49; is that right?

A. I don't know.

Q. Does that sound about right?

A. I suppose so, but I don't know anything about it.

Q. Was there any portion of that income on that—did you show any income for baking these cakes?

A. No, because I asked the people in Centralia about that and they said as long as I baked in my home it was a hobby and I didn't have to put it in.

The defendant Hubert then turned her inquiry to other facets of the case and when she had concluded, the defendant Haskell, in turn, had the plaintiff on cross-examination. The witness was then excused and the jury released until the next morning.

---

1. It is not apparent, in any event, what legal right of plaintiffs was infringed by the refusal of the trial court to direct a verdict for both plaintiffs against the defendant Hubert. If it can be said that proof of actionable negligence [liability and consequent damage] was conceded to the plaintiff wife by defendant Hubert, that right was presumptively redressed by the award in her favor. And the husband [whose damages were contested] was entitled at best to a directed verdict limited to liability; such a direction, however, would not have precluded denial of recovery by the jury.

In that posture of the proceedings, counsel for the plaintiffs pressed his objections:

MR. SIEGFRIED: Your Honor, I'd like to renew my objection to counsel using the income tax returns which were not introduced in evidence, *eliciting information from them without showing the materiality of the information,* going into matters that were not gone into on direct examination and not the proper subject of cross-examination and at this point and based upon this, this improper method of offering evidence to the jury to prejudice their minds against this particular plaintiff, I'd like to ask the court for a mistrial.

THE COURT: Well, the objection—and the Court will adhere to its ruling that it previously gave in this matter and request for a mistrial will likewise be denied. The Court recalls the question dealt with whether she had or had not made a report of the income derived from baking which was opened up on direct examination by your inquiry of her in that regard. It appears to the Court to be a legitimate cross-examination to go into the question of whether this income was or was not reported on her tax return.

MR. SEIGFREID: But the total income of those people as shown on their income tax return *has no relevancy or materiality in this case* and could do nothing more and was for no other purpose than to prejudice this jury's mind. We object to it and think a mistrial should be granted for allowing such evidence to be elicited, first of all, just by way of cross-examination, and secondly, by failure to adhere with the best evidence rule which would have shown that at least a portion of this income was from farm rental and certainly this whole thing had nothing to do with the materiality of this particular law-suit, what the earnings of these people are jointly has absolutely nothing to do with this lawsuit; * * *

THE COURT: The objection will be overruled and the request for mistrial will be denied.

\* \* \* \* \* \*

The Court also notes at no time when the jury was present was there any request made to strike that portion of the answer from the jury's consideration or to admonish the jury not to consider it, and that the request for a mistrial has been made at this time, sometime after the particular situation occurred.

\* \* \* \* \* \*

THE COURT: Again, Mr. Seigfreid, if you wish to make a request to the Court tomorrow morning that the Court instruct the jury to disregard that portion of the question, the Court will consider it at that time.

(Emphasis supplied.)

In this court, the plaintiffs complain that the evidence of income from rents and royalties during years 1970 and 1971 were irrelevant to any issue and that the jury bias induced against them by this misimpression of affluence should have been redressed by the grant of a mistrial. The defendants respond that this objection, which came for the first time after the jury had been excused for the day, was not seasonable, and that in any event, the grant or denial of a mistrial was a matter of sound judicial discretion.

█ It was the right of the defendants to attempt to discredit the proof of lost earnings. Contradiction as a means of impeachment, however, presupposes a previous factual statement by the witness inconsistent with his trial testimony. *Aboussie v. McBroom,* 421 S.W.2d 805, 807[1, 2] (Mo.App.1967). It is only when a witness denies or equivocates about a statement

that the examiner may show that he in fact did make a previous inconsistent statement. See, cases collected in 29A Mo. Digest, Witnesses On these principles, the income tax returns reported by the plaintiffs for years 1970 and 1971 were inadmissible as evidence for any purpose. They did not contradict, but rather confirmed, the testimony of Ms. Lewis that she had not reported the revenues from her baking enterprise for those years preceding the casualty, and since she claimed no other impairment of income from the collision, the tax returns which disclosed other sources of gain did not bear on any material issue in litigation.

 The question remains whether the plaintiffs moved opportunely by timely and specific trial objection to exclude the evidence of earnings from rents and royalties which they now present as immaterial and prejudicial to the verdicts. The purpose of objections to evidence is to avoid trial error and to enable the court to rule intelligently. To that end, the burden is on the party who objects to the admission of evidence to state the proper ground for exclusion. *Gerald v. Caterers, Inc.,* 382 S.W.2d 740, 743[2–4] (Mo. App.1964); 88 C.J.S. Trial § 123. At the trial the plaintiffs attempted to foreclose inquiry on the contents of the tax returns on the ground that the documents were the best evidence, a ground not asserted here. It was not until defendants had done with the cross-examination of the witness, and the jury was recessed for the day, that the plaintiffs first raised the objection made here, that the evidence of income [rents and royalties from oil properties] were neither relevant nor material to any issue and was calculated to prejudice their cause.

 It is fundamental to our jurisprudence that rich and poor stand alike in our courts and that neither the wealth of one nor the poverty of the other shall be permitted to affect the administration of the law. 22 Am.Jur.2d, Damages, § 319. The financial status of the parties to a litigation, therefore, is not admissible except when relevant to the issues joined. *Bremen Bank & Trust Co. v. Bogdan,* 498 S.W.2d 306, 312[5] (Mo.App.1973). In an action for compensatory damages for negligence, the affluence of the plaintiff is extrinsic to the cause of action and tends to distract the jury from a fair assessment of damages. *Welch v. Sheley,* 443 S.W.2d 110, 116[3] (Mo.1969). This rule of evidence, as any other, is waived when not invoked by a timely objection on a proper ground of exclusion. *Appelhans v. Goldman,* 349 S.W.2d 204, 207[4–6] (Mo.1961). The objection that the evidence of income was immaterial and prejudicial made for the first time after the jury was released came too late. Notwithstanding, the trial court offered to consider a motion to strike the offensive evidence on the next morning before the reconvened jury. The plaintiffs made no further move for redress, either by motion to strike or by a withdrawal instruction, except to insist then as now that a mistrial was the only effective remedy.

 The declaration of a mistrial is the most drastic remedy for a trial error and should be granted only when the resultant prejudice cannot be excised in any other way. *Furlow v. Laclede Cab Company,* 502 S.W.2d 373, 376[3, 4] (Mo.App.1973). The grant or denial of a mistrial is a matter largely within the discretion of the trial judge who has a commanding view of the effect of the evidence. The refusal of a mistrial was not an abuse of discretion in these circumstances.

The plaintiffs contend next that the trial court erred in refusing to permit them to show that the royalty income was not a recurring emolument. The record shows that contrary to this assertion witness Marion Lewis gave testimony that his parents, the plaintiffs, were poor farmers, and in this exposition the witness testified from the tax returns for not only years 1970 and 1971, but those for 1966, 1968 and 1969. For those latter three years, his parents reported an income of $4,137.50, a loss of

$806.61, and an income of $1,761.00, respectively. In the year 1970, his parents began to receive oil royalties on homestead land in Wyoming and income from that source, received also in 1971, would not continue "for very long, if any more". This evidence contradicts the contention of the plaintiffs, and goes far to dispel any prejudice which otherwise may have affected the proceedings.

Two other subsidiary points are without merit. The contention is made that the trial court erred in refusing to permit the plaintiffs to show how the rent and royalty income received in years 1970 and 1971 was spent. The plaintiffs do not support this point with argument or with authority. It is denied.

█ The last component point of the claim that prejudice to plaintiffs resulted from evidence of the income from royalties was that the court erred in disallowing their closing argument that such evidence had no bearing on the case. While it would have been altogether proper for the court to have allowed such an argument, in the circumstances presented, where the evidence had been received and retained by the jury for want of effective objection, motion to strike or other withdrawal, the trial court did not abuse discretion by the curtailment of argument. This is so particularly in the context of the statement of counsel, immediately preceding that the evidence of income was a deliberate stratagem to poison the minds of the jury.

The next point on this appeal is that evidence of family status was elicited from defendant Haskell by his counsel which enlisted the sympathy of the jury in favor of that defendant to the prejudice of the plaintiffs. As filed on this appeal, the transcript discloses these proceedings on direct examination:

Q. State your name to the jury, please.

A. Ben Haskell.

Q. How old are you, Mr. Haskell?

A. Twenty-four.

Q. Are you married?

A. Yes.

. . . . .

Q. You have any children?

A. One.

MR. SIEGFRIED [Counsel for plaintiffs]: Your Honor, one moment, please. [Out of the hearing of the jury]: We're right back into the same matter of improper questions, Your Honor. It's been held to be highly irregular and improper for counsel to show family status.

MR. FORD [Counsel for defendant Haskell]: I'll withdraw it.

. . . . .

MR. SIEGFRIED: I object to this type of question. I think it's highly improper for him to go into family status and I am not going to ask it be striken, I am going to ask for a mistrial on the grounds it is highly improper as to the—as to the prejudice, that's already been injected into this case.

THE COURT [within the hearing of the jury]: The objection as to the last question will be sustained. Proceed counsel.

█ The plaintiffs dispute the correctness of the transcript and contend that their objection to the question: "You have any children" put to defendant Haskell by his counsel came before the answer was made, not after as the transcript shows. On the formal motion of the plaintiffs, we remanded the cause to the trial court to settle the transcript. In obedience to our mandate, the trial court heard the contentions and concluded that the record as originally prepared, approved by counsel and filed in the appellate court accurately reports the proceedings. We are bound by that determination. Rule 81.12(c).

■ It is the general rule that in an action for personal injuries where compensatory damages are recoverable, evidence that a party has children is incompetent on any issue, not only because irrelevant, but because calculated to appeal to the sympathy of the jury. 22 Am.Jur.2d, Damages, § 318. The disclosure in evidence, above proper objection, of such a domestic fact gives rise to prejudicial error in most circumstances. *Stephens v. Hannibal & St. J. R. Co.,* 96 Mo. 207, 9 S.W. 589, 591[3] (1888); 9 Am.St.Rep. 336; *Heibel v. Robison,* 316 S.W.2d 238, 243[7] (Mo.App.1958); Annotation, 59 A.L.R.2d 396. " 'Where a question indicates that the response to it will be incompetent or inadmissible, an objection thereto, in order to be available, must be made before the answer is given, as it is too late to object thereafter, unless the answer is given before there is an opportunity to object.' " *Minks v. Smith,* 367 S.W.2d 6, 8[2] (Mo.App.1963). The question posited to defendant Haskell by his counsel plainly undertook to elicit incompetent evidence of family status. The objection which came after the answer came too late. The motion for mistrial on that ground was properly denied.

The remaining point asserts that the trial court should have allowed as evidence exhibits 8 and 18, checks given by the plaintiffs in payment for nursing care and excluded by the court because not shown to have been reasonable and necessary.

The evidence which bears on these exhibits shows that the plaintiff Minnie Lewis developed a facial melanoma some ten months after the collision. Her physician Dr. Jolly, surgically excised the malignancy four times but did not arrest the cancer. Dr. Jolly concluded she should have more expert care and referred her for that purpose to the Ellis Fischel Hospital in Columbia, Missouri, where she became the patient of Dr. John Spratt, the Chief Surgeon. Dr. Spratt detected not only the facial lesion, but also a malignancy on the left upper arm, and removed both surgically. Neither has recurred. At the trial, Dr. Jolly gave his opinion [to the effect] that the facial cancer was caused by the collision trauma, while Dr. Spratt testified that to a reasonable medical certainty the melanoma was not traumatically caused. At the conclusion of the plaintiffs' case, the defendants by joint motion reasserted their objection that the evidence that the facial cancer was traumatically caused was speculative and should be stricken. The court overruled the motion and submitted the issue to the jury.

The plaintiff Minnie Lewis testified that following facial surgery at the Ellis Fischel Hospital in April of 1971, she required nursing care at home to dress her face each day. She offered exhibit 8, a packet of cancelled checks in the aggregate of $3186.80, as proof of that expenditure. She acknowledged, however, that the nurses were used also to care for her husband who, by that time was suffering from the effects of advanced arteriosclerosis. Except for $20 paid anaesthetic services administered at the hospital, the balance of the expenditures shown by exhibit 8 were undifferentiated as to post-operative home nursing care for Ms. Lewis and that accorded her husband. The trial court received the exhibit provisionally pending full proof but denied final admission because there was no showing that the expenditures were reasonable or necessary. The plaintiffs cite the rule of law that payment of expenses for treatment of injury imports reasonableness of the charges and that where the nature and extent of the injury clearly result from the negligent act, the necessity for treatment is shown and a prima facie proof of damages is made. *Hay v. Ham,* 364 S.W.2d 118, 125[12–15] (Mo.App.1962).

■ We need not assess this contention against the evidence [which defendants insist did not allow the inference of traumatic cancer] but conclude there was no substantial evidence that the need for the home nursing care for Mr. Lewis [reflected by

exhibit 8] and his later institutional nursing care [reflected by exhibit 18] was proximately caused by the injury to Ms. Lewis. If we assume nonetheless that the expense of facial dressing was a proper item of damage, that proof is not made by exhibit 8 which integrates that competent proof with incompetent proof. On that basis, exhibit 8 was properly refused. This exclusion did not impair the legitimate proof—otherwise made by oral evidence—of the $20 expenditure for the anaesthetic services of a hospital nurse.

The rationale which excludes exhibit 8 excludes exhibit 18 as well. That exhibit shows a total of $6148.00 in cancelled checks in payment for home nursing care for both the plaintiffs and for the cost of later institutional care for the plaintiff Samuel Lewis when the home regimen became inadequate. The plaintiffs contend that the nursing care for Mr. Lewis, first at home and then at the Sherwood Arms, was made necessary because the casualty incapacitated her from continuing to care for her enfeebled husband.

The age of Mr. Lewis does not explicitly appear, but the evidence reasonably and cogently suggests that at the time of trial he was in his mid-seventies. Mr. Lewis did not testify, but his personal history was recounted by his wife and son, Denton. Their undisputed testimony draws this composite: At the time of the accident, March 22, 1969, Mr. Lewis was physically well but mentally debilitated. He was afflicted with a progressive arteriosclerosis and had to be cared for by Mrs. Lewis. In 1969, his condition was such that his son, Denton, commenced to keep records for his parents because "[his] father became incompetent to do so". His physical ability was not comparably impaired, however, so that he continued to drive his automobile and when Ms. Lewis returned home from the Audrain Medical Center following the casualty in March of 1969, he cared for her when she could not care for herself. The mental condition of Mr. Lewis continued to deteriorate so that by February of 1972, when he was placed in the nursing home, "he remember[ed] only 5% of the time". He was then "in bad condition from old age and arteriosclerosis mentally".

This evidence—that Mr. Lewis suffered from a condition of progressive mental debilitation which manifested at the time of the accident as an incompetence to keep personal records and then declined into a condition of confusion and almost total loss of recall—undermines the contention of the plaintiffs that Ms. Lewis was disabled by her injuries from continuing the home care to her husband she had managed successfully for ten months after the accident even with her burden of injury. This proof compels the equal possibility that in the natural course of events such professional care would have become necessary when it did even had Ms. Lewis not been injured.

■■■ Proof of damages is not a demand for absolute certainty, but only that the loss be the natural and proximate consequence of the wrongful act. *Evans v. Wabash Ry. Co.,* 223 Mo.App. 439, 12 S.W.2d 767, 768[2] (1928). That is to say, speculative, contingent, or merely probable results of injury are not proof of damages. *Moore v. St. Louis Southwestern Ry. Co.,* 301 S.W.2d 395, 402[7] (Mo.App.1957). The rule against uncertain or contingent damages applies to such damages as are not the certain results of the wrong. *Moore v. St. Louis Southwestern Railway Company, supra,* l.c. 403[9]; 25 C.J.S. Damages § 28.

■■■ The evidence of the plaintiffs raises an uncertainty whether the cause for the nursing expenses for Mr. Lewis was the progression of his affliction or the injury to Ms. Lewis; either possibility is as valid as the other, therefore neither is proved. Where the evidence tends equally to sustain either of two inconsistent propositions, neither has been established. *Reynolds v. Metropolitan St. Ry. Co.,* 136 Mo.App. 282,

116 S.W. 1135, 1138[3] (1909). The trial court properly excluded exhibits 8 and 18 which failed as competent proof of damages.

 The plaintiffs assert yet another claim of error as to the refusal of the court to allow the jury a view of exhibit 9 relating to expenses for drugs. This point was not raised in the motion for new trial and thus not preserved for our review.

The judgments are affirmed.

All concur.