Georgia **CAPRIGLIONE**, Respondent,

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY**, Appellant.

No. 49942.

Supreme Court of Missouri,

Division No. 1.

March 9, 1964.

John Mohler, Donald K. King, Wm. C. Sullivan, Leo E. Eickhoff, Jr., St. Louis, for defendant-appellant.

Paul H. Koenig, Roberts P. Elam, St. Louis, for plaintiff-respondent.

COIL, Commissioner.

Mrs. Cariglione sought $25,000 as damages for alleged personal injuries she sustained as the result of the averred negligence of Southwestern Bell Telephone Company, a corporation. We shall sometimes refer to the parties as they were designated in the trial court. A jury's verdict was for the defendant. The trial court granted plaintiff a new trial for the stated reason that the court erred in giving contributory negligence instruction 3–A. Defendant appealed from the new trial order and contends the trial court erred in refusing to direct a defendant's verdict at the close of all the evidence and in holding that instruction 3–A was erroneous. Inasmuch as we have determined, for reasons which will hereinafter appear, that the trial court did not err in granting a new trial for the giving of instruction 3–A, we first determine defendant's contention that plaintiff failed to make a submissible case.

In determining whether the trial court should have directed a verdict for defendant, we state the evidence from the standpoint most favorable to plaintiff, give her the benefit of all favorable inferences arising therefrom, and disregard defendant's evidence unless it aids plaintiff's case. Daniels v. Smith, Mo., 323 S.W.2d 705, 706 [1]. We bear in mind also that a jury "may believe all of the testimony of any witness or none of it, or may accept it in part and reject it in part; just as the jury finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in a case," Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, 298 [4, 5]; and that an issue is for the jury to decide unless the evidence and the reasonable favorable inferences therefrom "are so strongly against plaintiff as to leave no room for reasonable minds to differ." Nelson v. O'Leary, Mo., 291 S.W.2d 142, 147 [2–4].

About 10:30 on a night in March, 1958, plaintiff fell when she came in contact with one of defendant's 40-feet long telephone poles which defendant had temporarily stored in a horizontal position in and upon plaintiff's side yard at the time and under the circumstances to be recited. Plaintiff, with her husband and their children, lived in a house on the north side of DeTonty Street in St. Louis. Adjacent to the west edge of plaintiff's yard was a north-south paved alley. At the time in question there was no access to the front of the house (a front porch was under construction). There was a sidewalk which ran from the east edge of the alley (at a place approximately even with the rear of the house) east to a rear entrance. About 4:30 in the afternoon of the day in question plaintiff, her husband and their children, and plaintiff's mother who was temporarily living with them, left the home on a shopping trip. They left by the rear door and went to their car parked in the alley directly west of the rear door and, on returning sometime after 9 p. m., the husband drove to the rear sidewalk where all alighted except plaintiff's husband who continued on southwardly to keep some other appointment. At the time of their return,

plaintiff saw no telephone pole in the yard. Neither plaintiff nor any member of her family had given permission concerning and had received no notice from defendant that it had placed a telephone pole in plaintiff's yard. Plaintiff, the children and the grandmother went into the house via the rear entrance.

Plaintiff had promised them some ice cream upon their return from the shopping trip and left the house to purchase it and to mail some letters. To reach the drugstore, she went eastwardly on the walk which went from the alley on the west to the northeast corner of the house, turned to her right or south, and walked on a sidewalk which ran along the east edge of their property to the public sidewalk, and then east on DeTonty. She returned to the rear entrance of her home by the same route. When at her door she realized she had forgotten to mail the letters. The closest mailbox was located on DeTonty west of her home. She thereupon angled southwestwardly across the side yard. As she walked she fell over something "that was real long and dark." She didn't know what it was at the time but she "felt numb [and] shocked"—she was nine months pregnant at the time. Upon arising, she proceeded west on DeTonty a short distance to the home of some friends, the Cases, who assisted her into their apartment and tried to get in touch with her husband. She told Mr. Case that she "fell over something in my back yard." There was dirt on the front of her clothing. Mr. Case, after trying to reach plaintiff's husband, went to the yard to attempt to determine what had caused plaintiff to fall and discovered the telephone pole, whereupon he called the defendant and reported the incident.

Plaintiff testified that at the time she fell it was dark, "you couldn't see anything"; that there were no lights burning on the west side of her house; and that the street lights did not appreciably light the area in which the telephone pole was located. On cross-examination, defendant's counsel had

plaintiff trace the route she attempted to traverse on her proposed trip to the mailbox and the telephone pole was squarely in her path.

Defendant's evidence showed that on the day in question one of its crews was to replace two existing wooden telephone poles with longer ones; that one of the locations was at the edge of the same alley that was adjacent to plaintiff's property but about one-half block south of DeTonty; that the other location was at the east edge of the alley adjacent to plaintiff's yard; that the crew finished installing the new pole south of DeTonty and by that time it was too late to complete the other installation prior to quitting time; that defendant's crew, in accordance with instructions, laid the pole in plaintiff's side yard and staked it to prevent its rolling. The west side of the pole was about seven feet east of the east edge of the alley, the south end was about ten or twelve feet north of the north edge of the sidewalk running in front of plaintiff's house, and its north end was forty feet directly north. No member of the crew nor anyone else on behalf of defendant either obtained permission from plaintiff or any other member of the family to place the pole in the yard or informed plaintiff or any member of her family either by word of mouth or by any other method that the pole had been placed there during the family's absence.

▮▮▮ Defendant contends the trial court should have directed a verdict for it, because there was no evidence that the presence of the pole created a dangerous condition and because there was no evidence that plaintiff fell over the pole. The fact that neither contention is well taken is amply demonstrated by the above résumé of the evidence from a standpoint favorable to plaintiff. Certainly plaintiff had the right to use her own yard for the purpose of walking across it and surely she would not expect or be charged with constructive knowledge that there might be a telephone pole forty feet long lying directly in her

path. It is axiomatic that whether one is negligent depends upon all of the existing and surrounding circumstances as well as one's particular conduct which is charged· as constituting negligence. An act or omission which is negligent in some circumstances may not be negligent in others. Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 978. It seems abundantly clear that a jury reasonably could have found that defendant's act in trespassing upon and placing a telephone pole in plaintiff's yard without permission, without notice to plaintiff or to anyone representing her, and without providing adequate warning of its presence, constituted a failure on defendant's part to exercise ordinary care. And surely there can be no doubt that a jury reasonably could have found further, without resort to speculation or conjecture, that plaintiff fell because of the presence of defendant's telephone pole.

Most of defendant's argument on the submissible case issue might constitute, and apparently it did, an effective jury argument on the issue of plaintiff's contributory negligence; but the matters suggested and argued in the brief are irrelevant on the question of defendant's negligence.

█ Defendant contends its contributory negligence instruction was not erroneous. That instruction was:

"The Court instructs the jury that by the term 'contributory negligence' as that term is used in these instructions is meant a failure to exercise ordinary care, and by the term 'ordinary care' as that term is used in these instructions is meant that degree of care as would be exercised by an ordinarily careful and prudent person under the same or similar circumstances.

"Therefore, if you find and believe from the evidence in this case that on the occasion mentioned in Instruction No. 1 that plaintiff failed to exercise that degree of care as a reasonably prudent person would use, under the circumstances, for her personal safety, in failing to discover or ob-,

serve the presence of a telephone pole upon her yard, under the circumstances in evidence, if you so find, *or* if you find that plaintiff could have seen the said telephone pole upon her yard, had plaintiff looked, ·if you so find, and if you further find that plaintiff failed to take any available action to prevent injury to herself by avoiding contact with said telephone pole, if you so find, and if you further find that such failure, if you so find, directly contributed to the injuries to plaintiff, if you so find, then you should find that plaintiff was guilty of contributory negligence, then your verdict must be for the defendant and against the plaintiff." (Our italics.)

We shall pass without comment, but by so doing we do not indicate our approval of, the first paragraph of the instruction. The second paragraph directs a defendant's verdict if plaintiff failed to exercise ordinary care to discover or observe the telephone pole "under the circumstances in evidence." It also directs that plaintiff was contributorily negligent if she "could have seen" the telephone pole had she looked and could have avoided it.

The evidence stated most favorably from plaintiff's standpoint, as we have indicated heretofore, was that the area in which the pole lay was dark and that no street or other lights furnished sufficient illumination to indicate the presence of the pole and, further, that plaintiff saw no warning lights upon or about the telephone pole. Defendant's evidence was that the area was lighted by street lights and that the crew left four clean, lighted lanterns about and upon the pole, two of which were on the side from which plaintiff approached. Thus, plaintiff's evidence as to lights and lighting was diametrically opposed to defendant's evidence on that subject. Consequently, this was a case in which it was proper, if not· essential, that the instruction should have indicated the "circumstances in evidence" to which defendant intended to refer in the instruction. For example, by hypoth-, esizing that the area which the pole oc-

cupied was illuminated by street lights and that the presence of the pole was indicated by lighted lanterns clearly visible, etc.

■ Furthermore, and clearly erroneously, the instruction directs that plaintiff was contributorily negligent if the jury found that plaintiff "could have seen the said telephone pole upon her yard, had plaintiff looked," and could have avoided it. It is, of course, well settled that contributory negligence instructions should require the jury to find that plaintiff was guilty of a *negligent* act or omission and that such contributed directly to cause plaintiff's injury. Danner v. Weinreich, Mo., 323 S.W.2d 746, 750 [1].

Instruction 3–A does not require *a finding* that the failure of plaintiff to have seen the pole constituted negligence and that such negligence contributed directly to cause plaintiff's injury. Rather, the instruction directs that if plaintiff *could have seen the pole and didn't and that the failure to have seen it and to have avoided it contributed* to her injury, plaintiff was negligent.

■ Finally, and important under the facts of this case, the instruction directed the jury to find plaintiff contributorily negligent if she could have seen the telephone pole, without any reference to or direction concerning the applicable standard of care. Plaintiff was required to exercise ordinary care for her safety. The failure of the instruction to have informed the jury of that standard of care was particularly harmful to this plaintiff because, as we have noted heretofore, under the evidence favorable to her, she had no possible reason to have expected that a trespasser would place a telephone pole in her yard and that it would be in a path she might want to take across her own yard; and thus a jury reasonably could have found that plaintiff was under no duty to have maintained a lookout for a telephone pole stored in her yard. The fact situations are different, but the principles stated and applied in Johnson v. Presley, Mo., 320 S.W.2d 518, 524

[4], and in Lay v. McGrane, Mo., 331 S.W. 2d 592, 598, are applicable here. Those cases hold that an instruction is erroneous which is so drawn as not to make clear to a jury that the applicable test is not whether it was physically possible for a plaintiff to have discovered a situation or an object, such as the telephone pole in this case, if, for example, Mrs. Capriglione had examined the premises for obstructions, but the applicable test is what a plaintiff could or should have seen in the exercise of ordinary care; in this case, what Mrs. Capriglione should have seen in the exercise of ordinary care as she walked across her yard intent upon reaching a mailbox.

When it is considered: that the instruction failed to hypothesize generally or specifically *the circumstances* to which it referred in hypothesizing plaintiff's failure to have discovered the presence of the telephone pole; that the instruction did not require the jury to find, but directed, that plaintiff's failure to have discovered and to have avoided the telephone pole constituted negligence; and that the instruction permitted the jury to find plaintiff contributorily negligent by finding only that it was physically possible for her to have discovered the presence of the pole, without reference to the applicable standard of care required of her, we have no doubt that the instruction was erroneous and that the trial court did not err in granting plaintiff a new trial.

The judgment is affirmed and the case is remanded.

WELBORN, C., concurs.

HOUSER, C., dissents.

PER CURIAM:

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.