Margaret A. STEMME, a Minor, by her
Father and Next Friend, Forestell
W. Stemme, Appellant,

v.

William SIEDHOFF, Respondent.

No. 52974.

Supreme Court of Missouri,
Division No. 2.

April 8, 1968.

Motion for Rehearing or to Transfer to
Court En Banc or to Modify Opinion
Denied May 13, 1968.

James E. Hullverson, Orville Richardson, Hullverson, Richardson & Hullverson, St. Louis, for plaintiff-appellant.

George E. Lee and Doris J. Banta, St. Louis, for defendants-respondents; Carter, Bull, Baer, Presberg & Lee, St. Louis, of counsel.

HENRY J. WESTHUES, Special Commissioner.

Margaret A. Stemme, a minor, by her next friend, Forestell W. Stemme, filed this suit in the Circuit Court of the City of St. Louis, Missouri, against William Siedhoff, asking for $65,000 as damages for personal injuries alleged to have been sustained as a result of the negligence of Siedhoff in operating a car in which she was a passenger.

A jury trial resulted in a verdict and judgment for the defendant. A motion for a new trial was overruled and plaintiff appealed from the judgment against her.

We shall refer to the parties as plaintiff and defendant.

The cause was submitted to a jury on the doctrine of res ipsa loquitur.

The principal point briefed by plaintiff is that the trial court erred in not directing a verdict for plaintiff.

From the following statement of facts as disclosed by the evidence, it becomes obvious that there is no merit in plaintiff's contention.

Witnesses in their evidence occasionally referred to plaintiff as Margo and to defendant as Bill. On the evening of July 5, 1965, plaintiff, defendant, Dona Speziale, and David Luedde, met at the home of Paula and Bob Wehrman in Maplewood. While there, at about 10:30, plaintiff, defendant, Dona, and David decided to go to the Mississippi River to see the Goldenrod Showboat. Plaintiff and defendant rode in one car and Dona and David in another. Defendant drove one car and David drove the other. Defendant and plaintiff were in the lead and David and Dona followed. They drove on Manchester Avenue to McCausland and then turned onto Expressway No. 40, then east toward the river. The second car was delayed by traffic at McCausland which caused the occupants to be out of sight of each other. Defendant testified that he drove east on 40 on the inside lane next to the median strip. At that point there are three lanes each way.

Dona Speziale, who at the time of trial was the wife of David Luedde, testified by deposition as to what she observed after entering Highway 40. Note her evidence.

"MR. HULLVERSON (Reading): Now, what happened after you came up to the exit from McCausland into Highway 40?

"A Well, we pulled up the ramp and Bill and Margo were right in front of us, and then they pulled onto the highway and we stayed behind. I presume there were cars, David says there were cars.

"Q Something that kept you from following immediately?

"A Yes. We couldn't go on right behind them. And then we came—there is a little dip and we came up over the hill— * * *

"Q Going east?

"A Going east. And we had lost— well, as we came up the hill we saw the smoke.

"Q Well now, would you just describe what it was you saw there?

"A Well, I don't know what it was. We presumed it was dust from gravel or whatever. It was like a sheet, all across the road. We couldn't see through it.

"Q On the highway itself?

"A On the highway going completely across. It was thickest where Bill's car was in the median. Then as it progressed toward the furthest right lane, it was almost transparent, and we went through this, not knowing. And then David said, 'I wonder if it's Bill.' And we looked behind and saw the car with Margo slumping—

"Q Did you see the car as you passed through this smoke that you have described?

"A As we went through it—after we went through it, then David said, you know, 'I wonder if it's Bill.'

"Q Did you see a car then?

"A No, all we saw was the smoke. And then we turned and saw it, and then we pulled off.

"Q And you pulled off into the median strip?

"A Yes.

"Q And what was the position of this MG at that time?

"A It was at an angle, down in the—head-first.

"Q In the median strip between the eastbound and the westbound lanes of Highway 40?

"A Yes. * * *

"Q Did you see that there was another car that was near them in the median strip?

"A Yes.

"Q Was there any indication that that car had been damaged?

"A Yes, definitely.

"Q Were the cars separated?

"A Yes.

"Q How far apart were they?

"A Oh, five feet, ten feet.

"Q Were they headed or faced parallel or in the same direction, or do you know?

"A Well, they were kind of in a V. It looked as if Bill had hit that car and bounced it back and it had bounced Bill's car backwards."

Other evidence disclosed that the car with which defendant's car collided was unoccupied and had been parked in the median strip all that day. There was evidence that tire marks on the pavement of the inside lane of Highway 40 led from the pavement toward defendant's car.

Plaintiff and defendant sustained serious injuries. Plaintiff did not regain consciousness until four days later. Defendant's first recollection was when he was in a hospital.

Neither plaintiff nor defendant could remember anything that occurred after making the turn onto Highway 40 except that they were going east in the lane next to the median strip at a speed of about 45 miles per hour. Other evidence in the record is cumulative of what we have stated and did not tend to show what caused defendant's car to go onto the median strip. All witnesses agreed that nothing unusual occurred during the evening prior to-the unfortunate accident.

The case was submitted to the jury by the following instruction:

"INSTRUCTION NO. 4

"Your verdict must be for the plaintiff if you believe:

"First, defendant was the driver of the automobile, and

"Second, the automobile left the road-· way onto the median strip, and

"Third, such movement of the automobile was the direct result of defendant's negligence, and

"Fourth, as a direct result of such negligence the plaintiff sustained damage."

Defendant urges that the evidence was insufficient to support a verdict for plaintiff under the doctrine of res ipsa loquitur. Since there was a verdict for the defendant we need not determine this question, and we shall consider plaintiff's points.

Plaintiff contends she was entitled to a directed verdict and that the court erred in not giving the following instruction:

"INSTRUCTION NO. A

"Your verdict must be for the plaintiff if you believe:

"First, defendant drove off the traveled portion of the roadway onto the median strip, and

"Second, as a direct result of such conduct plaintiff sustained damage."

█ Plaintiff says that defendant was guilty of negligence as a matter of law in violating Section 304.015(3) by entering the median strip. We do not agree. There are circumstances that justify driving onto a median strip. Such action may become necessary to avoid a collision or striking a person attempting to cross the pavement. Wines v. Goodyear Tire & Rubber Co., Mo.App., 246 S.W.2d 525, 1.c. 528[4]; George v. Wheeler, Mo.App., 404 S.W.2d 426, 1.c. 430[6, 7][8]; Lincoln v. Railway Express Agency, Inc., Mo., 359 S.W.2d 759, 1.c. 765[5–7], and cases there cited. The tire marks on the pavement and the fact that defendant's car turned to the left onto the median strip tends to indicate that defendant may have been confronted with an emergency. Instruction A was properly refused.

Plaintiff offered, and the trial court refused to give, an instruction marked B.

This action was assigned as error. The instruction reads as follows:

"INSTRUCTION NO. B

"Your verdict must be for the plaintiff if you believe:

"First, defendant was the driver of the automobile, and

"Second, the automobile left the roadway onto the median strip, and

"Third, such movement of the automobile was a direct result of defendant's negligence, and you may infer that the defendant was negligent unless you find to the contrary from the evidence, and

"Fourth, as a direct result of such negligence the plaintiff sustained damage."

It may be noted that instruction B reads the same as instruction 4 which was given, except that the following words were inserted: "and you may infer that the defendant was negligent unless you find to the contrary from the evidence." It is stated in the brief that the instruction is a modification of MAI 26.02(1). Plaintiff, contending that refusal of Instruction B was prejudicial error, states:

"Our first point is this: the res ipsa loquitur doctrine was wiped off the books of Missouri law when the amendment to Rule 70.01 became effective on January 1, 1965. At one time the doctrine permitted the jury to be told that the burden of proof lay upon the defendant to demonstrate lack of fault in a res ipsa situation. The doctrine became permanently partially disabled under the impact of McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557 [92 A.L.R. 641] in 1932, which shifted the burden of proof by judicial fiat to the plaintiff. It languished but did not die, since it was resuscitated in 1934, succored and kept alive by Harke v. Haase, 334 Mo. 1104, 75 S.W.2d 1001 which permitted juries to be told that res ipsa loquitur facts were sufficient circumstantial evidence to warrant a finding that the defendant was negligent.

"This Court's committee, confronted with a felt and real necessity to simplify instructions in civil cases, faced up squarely to the perplexing problem of how to instruct on many matters. Two which must have concerned it deeply were (1) the burden of proof, and (2) res ipsa loquitur. [As one wit said: 'If the thing speaks for itself, why doesn't it talk in English?' We are in the process of demonstrating that it is now bereft of speech, its tongue having been cut out by M.A.I. 26.02(1)]."

■ We are of the opinion that counsel is unduly alarmed. The res ipsa doctrine still is in vogue and not eliminated by the Missouri Approved Instructions. Take the case before us. The instructions to the jury authorized a verdict for plaintiff if the jury found plaintiff's injuries were sustained through the negligence of the defendant in driving onto the median strip. Under the law the evidence must be so that a jury may find there was negligence. The burden to prove such negligence is on the plaintiff. Instruction B may be understood to inform the jury that the burden is on defendant to disprove negligence. It is not difficult to visualize an adroit counsel waving instruction B before a jury and saying, "Here it is; the court, not I, is telling you that you may infer that the defendant was negligent *unless you find to the contrary from the evidence.*" Such an argument may be very effective and a jury may interpret the instruction to mean that plaintiff is entitled to a verdict unless the evidence proved that the defendant was not negligent.

■ It still is the law that a plaintiff is not entitled to recover in a negligence case, including cases under res ipsa, unless the evidence justifies a finding of negligence on the part of the defendant. The law was so stated in the case of Harke v. Haase, 334 Mo. 1104, 75 S.W.2d 1001, l. c. 1004[9]; and see 65A C.J.S. Negligence §§ 220.1, 220.2, 220.3, pp. 506–524, and the many cases there cited.

The res ipsa loquitur doctrine survived McCloskey v. Koplar, 329 Mo. 527, 46 S.W. 2d 557. In fact, it is very much alive as may be seen by examining a number of recent cases, such as Parlow v. Dan Hamm Drayage Co., Mo., 391 S.W.2d 315 (Division I of this court), and Layton v. Palmer, Mo., 309 S.W.2d 561, 66 A.L.R.2d 1242 (Division II of this court). And the doctrine will survive the Missouri Approved Instructions. See Willis v. Terminal R. R. Ass'n, Mo., 421 S.W.2d 220.

Plaintiff urges that instruction B should have been given to counterbalance the instruction the trial court gave at the beginning of the trial (MAI 2.01). Note what plaintiff's counsel stated in the brief: "There was no *direct evidence* that defendant did *anything* negligently (assuming that it is not negligent to violate V.A.M.S., section 304.015(2) by entering a median). Without evidence how can anyone form a belief, particularly when told, as in M.A.I. 2.01, that 'it is your duty to determine the *facts,* and to determine them *from the evidence* and the reasonable inferences arising from such evidence, and in so doing *you must not indulge in guesswork and speculation.'* "

■ Does counsel mean to say that a plaintiff should be entitled to a verdict not based upon evidence but upon guesswork and speculation? To do so courts would be required to overturn the whole law of negligence in tort cases. The trial court was justified in refusing to give instruction B.

The last point urged in plaintiff's brief is that this court's action, by adopting the MAI forms in res ipsa cases, was unconstitutional because it made a change in the law relating to evidence in violation of Article V, Section 5, Missouri Constitution, V.A.M.S. Defendant contends that the point was not mentioned in the motion for a new trial. In plaintiff's reply brief it is stated that "Respondent makes much of our failure to raise the constitutional issues in our motion for new trial, i. e., at the earliest

opportunity. A motion for new trial affords a trial judge a locus penitentiae for the correction of his errors so as to avoid appeals. We simply cannot visualize the Hon. Michael Godfrey holding that a deliberate act of the Supreme Court of Missouri was unconstitutional! The law requires enough useless things as it is; it should not add one more. Judge Godfrey is bound by this Court's rulings; it would be an offensive dereliction of duty on his part, almost amounting to defiance, for him to have held that this Court had acted unconstitutionally. The question we raise is meritorious and sooner or later must be answered by this Court. It is here now and respondent has shown no prejudice by failure to raise it in the motion for new trial. That failure should not impede this Court, since the rule as to raising constitutional issues at the first opportunity is one for the Court's convenience for the doing of justice. It may be waived if the rule would require a useless thing to be done and result in an injustice. Cf. State ex rel. McMonigle v. Spears, 358 Mo. 23, 213 S.W.2d 210, 212 [5, 6]; Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763, 766[3, 4]."

■ Let us say before passing on the point that circuit courts have the authority to declare acts of the legislature or rules of this court unconstitutional so long as the question has not been judicially determined in a case by this court. We are certain that had the question been presented to Judge Godfrey he would have decided the point without any thought of defying this court.

We shall make an exception and decide the constitutional question raised even though not presented to the trial court, because of its great importance in connection with M.A.I.

In support of plaintiff's contention that this court, by Missouri Approved Instructions, has made a change in the law of evidence, plaintiff stated in the brief:

" 'The doctrine of res ipsa loquitur is a rule of evidence. * * *' Those are the words of this Court en banc in Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506. The Court continues: 'It is a rule of law for the Court, which attaches a definite probative value to the facts attending the occurrence in the light of common experience (Turner v. M.K.T. R. Co., 246 Mo. 28, 142 S.W.2d 455, 129 A.L.R. 829) and warrants the jury's finding of the ultimate fact of some kind of negligence from the fact of the unusual occurence (sic) itself'. And later: 'It is not a rule of substantive law, but merely one of evidence, and operates as a substitute for proof of negligence.' "

■ That still is the law and the Missouri Approved Instructions have made no change pertaining to the rules of evidence. Note that instruction 4, given for plaintiff, authorized a verdict for her without any proof of specific negligence. The instruction in substance informs the jury that a verdict may be in favor of plaintiff if defendant was the driver of the car, that it left the roadway onto the median strip, and that such movement was due to defendant's negligence, resulting in plaintiff's injuries. The only change resulting from the adoption of the Missouri Approved Instructions is that argumentative matters have been eliminated from instructions. Missouri Approved Instructions were adopted so that questions of fact may be accurately and concisely submitted to a jury in lieu of the vast amount of surplusage that formerly was found in many instructions.

■ We can think of no evidence which was admissible in a res ipsa case before MAI were approved which would not now be admissible. The quantum of evidence required to make a submissible case under the doctrine has not been curtailed or enlarged. It is our opinion that this court, in adopting the MAI, did not change the law relating to evidence in res ipsa cases.

The judgment of the trial court is hereby affirmed.

PER CURIAM.

The foregoing opinion by WESTHUES, Special Commissioner, is adopted as the opinion of the court.

All concur.