Lisa McALISTER, a minor, by Clarence McAlister, her father and next friend, et al., Plaintiffs-Appellants,

v.

Wilford Charles URHAHN, Defendant-Respondent.

No. 34477.

Missouri Court of Appeals, St. Louis District, Division Two.

Feb. 20, 1973.

Goldenhersh & Newman, St. Louis, for plaintiffs-appellants.

Dearing, Richeson, Roberts & Wegmann, Hillsboro, for defendant-respondent.

WILLIAM M. TURPIN, Special Judge.

This is an appeal from jury verdicts in favor of defendant and against five plaintiffs-appellants. The five causes of action were by agreement consolidated for trial.

Defendant-respondent's motion for a directed verdict at the close of plaintiffs-appellants' case was overruled. At the close

of all the evidence defendant-respondent again moved for a directed verdict which was again overruled. The case was submitted to the jury solely on defendant-respondent's failure to keep a lookout. The jury returned a verdict in favor of defendant-respondent and against all five plaintiffs-appellants. Plaintiffs-appellants' joint motion for a new trial was overruled. They appeal.

Plaintiffs-appellants, Shirley Tettaton, her daughter Lisa, and Lisa McAlister were passengers in a car being driven by Glenna McAlister, the mother of Lisa McAlister and the wife of plaintiff-appellant Clarence McAlister. Their car collided with a tractor-trailer truck owned and operated by defendant-respondent at the intersection of U.S. Highway 61 and Starling Airport Road. Parties will be referred to as plaintiffs and defendant in this appeal as they appeared in the trial court.

Plaintiffs' sole ground on appeal is that the trial court erred in admitting into evidence over their objection Trooper Hoelker's testimony to the effect that the driver of the car in which they were riding failed to yield the right-of-way, and made an improper left turn, because the testimony was conclusions and invaded the province of the jury, all to plaintiffs' prejudice.

Defendant contends that the evidence was properly admitted under the doctrine of "curative admissibility" and further that the evidence was not prejudicial to plaintiffs since it went to matters not in dispute.

Defendant also contends that the verdict and judgment rendered in the trial court should be sustained without regard to whether the admission of the Trooper's evidence was erroneous because the plaintiffs did not make a submissible case, and that his motion for a directed verdict at the close of the case should have been sustained. We agree.

In ruling this matter we must keep in mind the well-established rule that the evidence must be viewed in a light most favorable to plaintiffs, and that plaintiffs are entitled to all inferences properly discernible from the evidence.

Starling Airport Road is an east-west thoroughfare which came to a T-intersection with U.S. Highway 61 and was approximately 25 feet wide at the intersection. U.S. 61 is a north-south thoroughfare and was approximately 45 feet wide with a shoulder 10 feet wide, two lanes for southbound traffic, and two lanes for northbound traffic separated by a double center line. The weather at the time was clear and the pavement dry. A stop sign directing traffic on Starling Airport Road was located 15 feet back from the traveled portion of 61. There was no stop sign on U.S. 61 at the intersection.

The McAlister car had stopped at the stop sign on Starling Airport Road before turning left into southbound U.S. 61. While the car was waiting at the stop sign, an LP tank truck driven by Mr. Mound stopped in the southbound center lane of U.S. 61 five or ten feet from the north side of Starling Airport Road. Mr. Mound turned on his left turn signal, and waited for northbound traffic to clear so he could turn left onto Starling Airport Road. As defendant was approaching this point, also going south, he saw the tank truck rolling to a stop. At this time he also saw the McAlister car for the first time at the stop sign with no signal on to indicate which way she was going to turn.

Before entering the highway Mrs. McAlister edged toward the highway in a stopping and starting motion. She finally entered the highway, making a left turn in front of the LP gas truck. She moved 65 feet from her stopped position past the LP gas truck and into the outside southbound lane of U.S. 61 at an angle from the stopped position, during which time she reached a speed of 10 to 15 miles per hour.

Defendant never saw Mrs. McAlister leave the stop sign. He never saw her edge toward the highway. When defendant saw plaintiff for the first time at the stop sign he was between 200 to 300 feet from the intersection and traveling 45 miles per hour. After the defendant saw the plaintiff for the first time after the stop sign, he did not continue to watch her. Defendant eased his foot off the accelerator, slowing to between 35 and 40 miles per hour, which was his speed as he passed the LP gas truck on the right and struck the McAlister automobile.

Skid marks from the rear wheels of defendant's truck were noted by Trooper Hoelker as being 30 feet long in the right lane next to the shoulder. The skid marks did not lead to the point of impact because the front wheels were ahead of the skid marks. Defendant and Mr. Mound testified that the skid marks as located by the Trooper were past the LP truck, although defendant did not completely clear the LP truck upon impact which was south of the south edge of Starling Airport Road. Defendant saw Glenna McAlister's car for the second time when it was halfway in the LP truck's lane (center southbound lane) and not completely in defendant's lane, which was two to three seconds before impact. Defendant testified that he sounded his airhorn, but Mr. Mound testified that he did not hear defendant sound the horn. Defendant took his foot off the accelerator approximately 45 feet from the beginning of the skid marks.

Mrs. Wilcox, a witness to the accident, testified that the McAlister automobile was hit by defendant after leaving the stop sign and proceeding at an angle across the northbound lanes and into the southbound shoulder lane. Mrs. McAlister was traveling 10 to 15 miles an hour and was about 20 feet in front of the LP truck when she was hit. The impact occurred 65 feet from the stop sign and the car ended up against a utility pole 165 feet south of the point of impact.

The testimony of the Trooper which the plaintiffs complain of was:

"Q. [To Trooper Hoelker] Fine, sir. Now, have you made some indications as to what your investigation indicated to you the McAlister vehicle was doing?

A. Yes, sir.

Q. And would you tell us, please, what those conclusions and opinions are?

A. That it was making a left turn; and that it had not yield [sic] the right-of-way; and that the left turn was an improper left turn."

■ For the plaintiffs to have made a case against the defendant for failure to keep a lookout, the burden rests upon them to demonstrate first, that defendant negligently failed to look or negligently failed to see what looking would reveal; and second, that his failure to see was the direct and proximate cause of the accident. Stegall v. Wilson, Mo.App., 416 S.W.2d 658.

While the McAlister car was moving the only obstruction to defendant's view of the car was the LP tank truck. The evidence is silent as to at what point on the highway defendant would be before the truck would restrict his view, or for how long a time or for what distance traveled.

■ The burden is upon plaintiffs in this case to satisfy the element of causation. Plaintiffs must show that at the time defendant should have seen them in apparent danger he ". . . had the ability thereafter to avoid the collision. Otherwise, there was no showing of proximate cause . . ." Bracken v. Koch, Mo. App., 404 S.W.2d 201 at 205. Of this there is no evidence.

■ Defendant's duty to avoid the collision arose when he should have realized that the automobile was likely to proceed into his path. Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111.

There is no evidence in this record of stopping distances or swerving distances. Equally, there is no evidence of defendant's position on the highway at the time plaintiffs came into apparent danger.

Even if defendant had seen the automobile sooner than he did, there is absolutely no evidence in this record to demonstrate that he could have recognized the danger of collision in time thereafter to have avoided the collision. In short, there is no causal connection between failing to see, if there was a failure, and the collision.

Because the defendant was entitled to a directed verdict, the court will not burden this opinion with a discussion as to whether or not "curative admissibility" was proper in the Trooper's testimony.

The judgment of the trial court is affirmed.

SMITH, P. J., and SIMEONE and KELLY, JJ., concur.