Laney M. DESKIN and Howard A. Deskin, Plaintiffs-Respondents,

v.

Susan Dee BREWER, Defendant-Appellant,

and

Jeanne Y. Elayer, a Minor, Defendant.

Laney M. DESKIN and Howard A. Deskin, Plaintiffs-Respondents,

v.

Susan Dee BREWER, Defendant,

and

Jeanne Y. Elayer, a Minor, By and Through Her Next Friend, Kenneth Elayer, Defendant-Appellant.

Nos. 10038, 10039.

Missouri Court of Appeals, Southern District, En Banc.

Oct. 25, 1979.

Rehearing Denied Nov. 19, 1979.

Harold J. Fisher, David W. Ansley, Woolsey, Fisher, Clark, Whiteaker & Stenger, Springfield, for defendant-appellant Susan Dee Brewer.

Gerald H. Fowther, C. Ronald Baird, Lowther, Johnson, Franks & Baird, Springfield, for defendant-appellant Jeanne Y. Elayer.

Jerry L. Reynolds, Donald E. Bonacker, Bonacker & Reynolds, Springfield, for plaintiffs-respondents.

PER CURIAM.

These appeals were argued and submitted in this court at its June 1978 session. An opinion was thereafter prepared and adopted, but was set aside and withdrawn upon plaintiffs' motion for rehearing. After this court was fully constituted, the appeal was again argued and submitted to the whole court. Parts of the divisional opinion have been adopted and are incorporated herein without the use of quotation marks.

The action is an action for damages sustained by plaintiffs as a result of an automobile collision; the collision involved three vehicles. The plaintiffs joined both defendants in a single action. Plaintiffs averred that plaintiff Laney M. Deskin sustained serious personal injuries and plaintiff Howard A. Deskin suffered loss of consortium "as a result of the combined, joint and concurrent. negligence" of [both] defendants; plaintiffs had a verdict and judgment against both defendants in the amount of $60,000. The defendants appealed separately; the appeals were consolidated for argument but will be considered separately.

The casualty occurred in the south part of Springfield, Missouri, near the intersection of Campbell Avenue and Broadmoor Street about 8:00 a. m. on January 9, 1973. At the place where the accident happened, Campbell is a five-lane street, a thoroughfare for traffic moving north and south. On the east, there are two lanes for northbound traffic, each about 12 feet wide. There is a middle or median lane, 15 feet wide, from which both north and southbound vehicles may turn left. On the west, there are two southbound lanes, each 12 feet wide. Broadmoor is an east-west street which intersects Campbell at a right angle on the west. As one approaches Campbell on Broadmoor, the street inclines downgrade. Traffic eastbound on Broadmoor is controlled by a stop sign some 4 to 5 feet west of Campbell on the south side of Broadmoor.

Driving conditions at the time of the casualty were execrable. Weather data read to the jury indicated that the average temperature on January 9, 1973, was 9° F;

at 6:00 a. m., two hours before the accident, the average ground cover consisted of 5 inches of snow, ice and ice pellets; "traces" of precipitation (described by plaintiff Howard Deskin as "kind of a mist") were noted at 7:00, 8:00, 9:00, 10:00 and 11:00 a. m. More specifically the investigating police officer noted "snow, ice and wet [patches]" on Campbell, and "snow and ice" on Broadmoor. Defendant Elayer found the intersection of Broadmoor and Campbell so slick that she "fell down" upon alighting from her car after the accident. Plaintiff Howard Deskin testified that the driving lanes on Campbell were "icy" with "just [ruts] running down where the tires [had been over the surface]"; moreover, "[T]here was humps . . . in the center [between the ruts] . . . there was a hump of [snow and ice] in between [the ruts]." Plaintiffs' Exhibits 7 and 10, which are 16- by 20-inch photographs of the approximate point of collision, show areas of snow, ice and icy glaze near the intersection of Campbell and Broadmoor.

The record is a welter of approximations, "estimates," "best judgments" and outright contradictions, but the jury might reasonably have found: that immediately prior to the casualty, plaintiff Laney Deskin was driving north on Campbell in the eastern-most northbound ["outside" or "curb"] lane, going "about twenty-five, thirty miles an hour." Plaintiff Laney suffered retrograde amnesia as one of the consequences of the accident; although she "wish[ed] [she] could" remember, Laney's recollection extended only to the time she was passing the "Carriage House." The "Carriage House" is a retail furniture store located to the east of Campbell, "3 to 4 blocks" south, as Laney recalled, of the approximate point of impact. According to the "best judgment" of another witness the store is approximately 600 feet south of the intersection of Campbell and Broadmoor. Laney was following two vehicles behind a white truck; she remembered looking at her rear view mirror to see if it was safe to pass, but that was the extent of her recall.

Defendant Susan Dee Brewer was driving south on Campbell in the west curb lane. Defendant Brewer testified she was going 20 to 25 miles per hour, and the jury could reasonably have found she was driving faster. Defendant Elayer, in the meantime, was approaching the intersection of Campbell and Broadmoor from the west. Defendant Brewer saw Elayer, sliding east toward the intersection at a time when she, Brewer, was about 50 feet north of the intersection. The Elayer car was sliding forward, but defendant Brewer "never expected that [Elayer] would not stop," and considered it sufficient to sound her horn as she drove toward the intersection.

From the varying statements made by both defendants, the jury could reasonably have found that defendant Elayer did not stop short of the area of intersection between Broadmoor and Campbell, and that defendant Brewer could have swerved to her left, avoiding the Elayer vehicle, but failed to do so. In any event, the right rear of the Brewer vehicle struck the front part of the Elayer vehicle, and thereafter slid or spun—or both—southeasterly some 225 feet where it struck the Deskin automobile head-on in the west northbound lane of Campbell, or, as plaintiffs' counsel insist and reiterate, on the "wrong" side of the road. Such is the factual background of the case, as briefly as it can fairly be stated.

We first consider defendant Brewer's appeal. Her initial assignment of error has to do with the trial court's refusal to permit an expert witness to testify that defendant Brewer's automobile could not have "changed lanes" in time to avoid striking the plaintiffs' vehicle, and the trial court's refusal of an offer to prove by the expert that because the Brewer car spun after it came in contact with the Elayer vehicle, defendant Brewer could not have avoided the collision. Citing various cases in which "expert" testimony concerning stopping distances has been held admissible, e. g., *Burrow v. Moyer*, 519 S.W.2d 568, 570[3] (Mo. App.1975), and *Sullivan v. Hanley*, 347 S.W.2d 710, 716[7] (Mo.App.1961), defendant Brewer argues that the expert's testimony should have been admitted to rebut the inference of negligence which arose

from her being on the wrong side of the road, as outlined in *Friederich v. Chamberlain*, 458 S.W.2d 360, 366[4][5][6][7] (Mo. banc 1970).

In the view we take of this appeal, the point need not be discussed at length. The expert witness was called by defendant Elayer; he was permitted to testify to some stopping distance tests he had made on Campbell Avenue in the vicinity of Broadmoor and Campbell. As the examination of the expert progressed, it became apparent that counsel for both defendants were attempting to "reconstruct" the accident and allocate fault on the basis of the expert's testimony. His opinions concerning the maneuvers which could have been made by the parties to avoid the accident were consistently excluded by the trial court. The substance of the specific inquiry to which objection was sustained was whether defendant Brewer could have swerved in 1½ car lengths, "assuming [driving conditions] to be as [counsel had] stated, where the tire tracks go,[1] . . . there's something causing a slick condition . . . and . . . [defendant Brewer] . . . is spinning around . . . ." After objection to this question was sustained, counsel for defendant Brewer offered to show by the witness that defendant Brewer could not have swerved in 1½ car lengths after she had struck or been struck by the Elayer vehicle.

▪ It may be conceded that results of experiments made out of court are admissible in the discretion of the trial court if it is shown that the experiments were conducted under conditions substantially similar in essential particulars to the conditions prevailing at the time of the occurrence in suit. *Faught v. Washam*, 329 S.W.2d 588, 598[13], and authorities cited n. 13 (Mo.1959). Opinion evidence is a somewhat different matter. It is doubtless true that an expert's opinion as to causation is no longer objectionable solely upon the ground that the opinion bears on an ultimate issue in suit. *Eickmann v. St. Louis Pub. Sv. Co.*, 363 Mo. 651, 663–664, 253 S.W.2d 122, 129–130[7, 8]

(1952); Comment, Expert Testimony in Missouri on Point of Impact in Automobile Accidents, 33 Mo.L.Rev. 645, 648–654 (1968); C. McCormick On Evidence, Evidence § 12, p. 27 (2d ed. 1972). Nevertheless, our Supreme Court has balked at permitting the complete "reconstruction" of automobile casualties so as to permit the allocation of fault by expert hindsight. *Housman v. Fiddyment*, 421 S.W.2d 284, 289[1–4] (Mo.banc 1967). As we view the legal question at hand, it was for the trial court to determine, in the exercise of discretion, whether expert testimony was necessary and whether the testimony, as offered, would assist or merely tend to confuse or usurp the function of the jury. *Housman v. Fiddyment*, supra, 421 S.W.2d at 289; *Yocum v. Kansas City Pub. Sv. Co.*, 349 S.W.2d 860, 864[1] (Mo.1961); *Eickmann v. St. Louis Pub. Sv. Co.*, supra, 363 Mo. at 665, 253 S.W.2d at 130[11]. We find no abuse of that discretion.

▪ Plaintiffs submitted their case against defendant Brewer on two disjunctive grounds: 1) failure to swerve after defendant Brewer knew or by the use of the highest degree of care could have known there was a reasonable likelihood of collision with defendant Elayer's vehicle, and 2) being on the wrong side of the road at the time of collision with the vehicle being driven by plaintiff Laney Deskin. Defendant Brewer objects to the form of Instructions 2 and 3, and maintains there was no substantial evidence to support either disjunctive submission. We must consider the submissibility arguments first. There must be evidence to support both disjunctive submissions, *Wolfe v. Harms*, 413 S.W.2d 204, 209–210[1] (Mo.1967); *Hardy v. St. Louis-San Francisco R. Co.*, 406 S.W.2d 653, 659[6] (Mo.1966), and unless the plaintiffs adduced substantial evidence in support of both alternative assignments, any defects in the form of the verdict-directing instructions are immaterial. *Howard v. Johnoff Restaurant Company*, 312 S.W.2d 55, 56[1] (Mo.1958); *Milazzo v. Kan-*

---

**1.** The witness seems to have had plaintiffs' Exhibit 7 before him.

*sas City Gas Co.,* 180 S.W.2d 1, 3[1] (Mo. 1944); *Rakestraw v. Norris,* 478 S.W.2d 409, 416[13] (Mo.App.1972).

With respect to the first ground of recovery submitted—failure to swerve after danger of collision became apparent—defendant Brewer cites *Cook v. Cox,* 478 S.W.2d 678, 680[3, 4] (Mo.1972); *Zalle v. Underwood,* 372 S.W.2d 98, 102[1–3] (Mo. 1963), and like precedents, and argues at length that there is no substantial evidence that she had sufficient time and distance, considering the movements and speeds of the vehicles, and the driving conditions, in which to take effective action to avoid the Elayer vehicle after the duty to do so arose. In considering this claim of error, it is borne in mind that plaintiffs are entitled to have the evidence considered most favorably to their submission, disregarding defendant's evidence unless it tends to support the submission, *Rickman v. Sauerwein,* 470 S.W.2d 487, 489[1] (Mo.1971), and that a jury is at liberty to believe all of the testimony of any witness or none of it, or accept it in part and reject it in part, just as it finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in the case. *Capriglione v. Southwestern Bell Tel. Co.,* 376 S.W.2d 205, 206[2] (Mo.1964); *Kickham v. Carter,* 314 S.W.2d 902, 905[1] (Mo.1958); *Robertson v. Grotheer,* 521 S.W.2d 452, 457[5] (Mo.App. 1975).

As between the two defendants, defendant Brewer was the "favored" motorist and defendant Elayer the "disfavored" motorist. Defendant Brewer's duty to act arose when it became apparent, or reasonably should have become apparent, that defendant Elayer was likely to proceed into her path of travel. *McAlister v. Urhahn,* 492 S.W.2d 19, 21[4] (Mo.App. 1973); *Greenwood v. Bridgeways, Inc.,* 243 S.W.2d 111, 114[5] (Mo.App.1951).

Upon trial, defendant Brewer testified she was "about fifty feet" north of the intersection when she first saw the Elayer car. The Elayer vehicle was then "about fifty feet" west of the intersection. Upon trial, defendant Brewer stated that she sounded a warning "to alert [Miss Elayer]" of her presence. Defendant Brewer estimated her speed at that point to be 20 to 25 miles per hour, and that "to the best of my judgment, I made the decision that [Miss Elayer] was going to stop at the corner so that I could turn my attention to other road conditions and I proceeded on through the intersection because I never expected any collision." At another point, however, defendant Brewer testified that as she approached Broadmoor, the Elayer vehicle continued to proceed very slowly downhill toward the intersection. Defendant Brewer's argument, upon such testimony—we have quoted only illustrative parts—is that there is no showing she could have swerved to avoid the Elayer car, even though defendant Brewer was particularly and specifically asked: "Q. Are you telling this Jury within fifty feet, going twenty miles an hour you couldn't have swerved your car over into the other lane?" and Mrs. Brewer answered (our emphasis) "A. *If I had felt the need to swerve I could have, yes.*" Defendant Brewer's duty to act depended on reasonable appearances. If Miss Elayer appeared to be slowing or slackening her speed as defendant Brewer approached the intersection, defendant Brewer's duty might have been discharged merely by giving a warning of her approach. If, on the other hand, defendant Elayer continued to proceed toward the intersection after defendant Brewer sounded a warning, it became defendant Brewer's duty to swerve. *Pitts v. Garner,* 321 S.W.2d 509, 518[11] (Mo.1959); and *Boone v. Richardson,* 388 S.W.2d 68, 74[9] (Mo.App.1965). Without going into detail, there was evidence that the Elayer vehicle continued to slide east into the intersection from the time defendant Brewer first saw it up to the time of collision. Given the jury's right to believe all, none, or any part of any witness' testimony or to accept it in part and reject it in part, *Robertson v. Grotheer,* supra, 521 S.W.2d at 457[5], we cannot say as a matter of law that Mrs. Brewer had neither the opportunity nor the means at hand with which to turn aside and avoid collision with

the Elayer vehicle, even if we accept her trial testimony as the only evidence bearing on her liability.

■■■ We need not base our ruling on what defendant Brewer said upon trial, however. Plaintiffs have answered defendant Brewer's point as presented, but the argument leaves out of consideration the rule that a party's admission of a material fact relevant to an issue in the case is competent against him as substantive evidence of the fact admitted. And, for a statement by a party to be competent as an admission against interest, it is not necessary that it be a direct admission of the ultimate fact in issue, but it may be competent and of probative value if it bears on the issue incidentally or circumstantially. *Gaddy v. State Bd. of Registration for Healing Arts*, 397 S.W.2d 347, 354, and cases cited nn. 9, 10 (Mo.App.1965). Moreover such evidence is admitted under a recognized exception to the hearsay rule, and proof of such an admission does not depend for its admissibility on conformance to any other exception to the hearsay rule, such as res gestae. *Rutledge v. Ballance*, 375 S.W.2d 214, 215–216[1] (Mo.App.1964). In this case, defendant Brewer admitted having said, in a typewritten statement made to plaintiffs' counsel [2] that she, Brewer, was 150 feet north of the Elayer vehicle when she first saw it, and, in substance, that she did not believe that Miss Elayer would stop short of her path of travel. While defendant Brewer sought to disparage the accuracy of this statement, she admitted having made it. If the jury accepted the statement, rather than defendant Brewer's trial testimony as true, then it could surely have found defendant Brewer had both the duty and the means to swerve to avoid Miss Elayer.

■■■ In so holding, we have not lost sight of defendant Brewer's argument that there should be evidence that she could have swerved or turned aside with reasonable safety. We think a jury might reasonably have concluded that defendant Brewer could have turned aside safely even without Mrs. Brewer's positive statement that she could have done so. The location of the damage to the vehicles is in itself some evidence of their relative positions at the time of impact, *Thompson v. Jenkins*, 330 S.W.2d 802, 805–806 (Mo.1960); *Boone v. Richardson*, supra, 388 S.W.2d at 73[5]; *Curtin v. Benjamin*, 305 Mass. 489, 26 N.E.2d 354, 355[3, 4], 129 A.L.R. 433, 437, (1940), and defendant Brewer's Exhibit "B" shows that the damage to her vehicle resulting from the collision with Miss Elayer is located at the right rear, and is relatively minor. In short, reasonable minds could infer that no swooping left turn was necessary; by turning aside slightly, defendant Brewer might have avoided the collision. Inasmuch as a slight swerve can be accomplished in a very short time with very little actual movement of the vehicle, *Brown v. Callicotte*, 73 S.W.2d 190, 193 (Mo.1934); *Berry v. McDaniel*, 269 S.W.2d 666, 671–672 (Mo.App.1954), the trial court did not err in submitting an unsafe maneuver to the jury.

■■■ We need not be long in considering the submissibility of the second disjunctive assignment—being on the wrong side of the road. In this case, to avoid the inference of negligence created by her collision with plaintiffs' vehicle in the west northbound lane of Campbell Avenue, defendant Brewer was obliged to produce evidence of justification so conclusive that no reasonable man could infer that she was negligent in getting on the wrong side. *Friederich v. Chamberlain*, supra, 458 S.W.2d at 366[7]. As a general rule, a defendant's negligence is a proximate cause if it is an efficient cause which sets in motion the chain of circumstances leading to the plaintiffs' injury or damages, and defendant Brewer would be liable if her negligence combined with other causes, including the negligence of defendant Elayer, to produce the plaintiffs' damages, even though defendant Brewer's negligence was not the sole proximate cause of the second collision. *Cluck v. Snodgrass*, 381 S.W.2d 544, 547–548 (Mo.App.1964). Inasmuch as a

2. Offered in evidence as plaintiffs' Exhibit 9.

jury could have inferred that defendant Brewer's negligence was an efficient and producing cause of the first collision, and that the second collision would not have occurred if the first had not, it cannot be said there was error in submitting negligence in being on the wrong side of the road.

We now come to defendant Brewer's contention that the giving of Instructions 2 and 3, plaintiffs' verdict-directors, was prejudicially erroneous because those instructions "violated M.A.I. and were confusing and misleading to the jury, were argumentative and gave the jury a roving commission in that plaintiffs failed to state which collision they referred to in alleging that defendant Brewer was on the wrong side of the road."

Instruction No. 2 submitted plaintiff Laney Deskin's case against defendant Brewer in the following language: (our emphasis)

"Your verdict must be for plaintiff Laney M. Deskin on her claim for damages and against defendant Susan Dee Brewer if you believe:

First, defendant Susan Dee Brewer either: knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of *collision with the Elayer automobile* in time thereafter to have swerved, but she failed to do so, *or* defendant Susan Dee Brewer's automobile was on the wrong side of the road *at the time of the collision*, and

Second, defendant Susan Dee Brewer's conduct in any one or more of the respects submitted in paragraph First, was negligent, and

Third, such negligence either directly caused damage to plaintiff Laney M. Deskin or combined with the acts of defendant Jeanne Y. Elayer to directly cause damage to plaintiff Laney M. Deskin."

Essentially, defendant Brewer's argument is that these two instructions were "confusing and misleading" and amounted to a "roving commission" because paragraph First of the instructions fails to identify the collision to which it refers in submitting that defendant Brewer was on the

wrong side of the road. In the "argument" part of her brief, defendant Brewer contends that "[these instructions]" in this respect "[are] misleading, confusing and ambiguous." The plaintiffs' answer is, basically, that they submitted their case as required by the M.A.I. and that it was for the trial court to judge whether the jury was in fact confused or mislead.

◼ Upon careful consideration, and after rehearing the argument of counsel, we are convinced there is no merit in this point. Defendant's argument, reduced to its essence, is that the instructions are ambiguous and the jury was therefore misled. There is no question that the instructions are ambiguous, to a degree, but an otherwise proper instruction is not necessarily prejudicially erroneous because it is technically susceptible of differing constructions. In *Wegener v. St. Louis County Transit Company*, 357 S.W.2d 943, 948–949 (Mo. banc 1962), our Supreme Court indicated that an instruction submitting humanitarian negligence should not have been refused on the ground that it submitted that a bus was approaching from the "west" when the evidence was that the bus approached from the east. The court quoted respondent's brief, and commented thus, 357 S.W.2d at 949:

". . . As stated in respondent's brief 'All the evidence clearly showed that the motorbus was approaching from the *east*,' and in view of the unanimity of the witnesses on both sides with reference to the direction from which the bus was approaching, this clerical error could not possibly have misled the jury. . . ."

Another illustrative example is found in *James v. Turilli*, 473 S.W.2d 757 (Mo.App. 1972), wherein the verdict-director hypothesized the existence of affidavits (plural) although only one affidavit was in fact received in evidence. On appeal, our colleagues at St. Louis upheld the trial court's ruling that a jury of reasonably intelligent men and women could not have been confused.

These two precedents—others might be cited—illustrate our point. In determining whether Instructions 2 and 3 were so ambiguous as to be prejudicially confusing, we are entitled to believe that the jury was composed of reasonably intelligent men and women. *Price v. Seidler*, 408 S.W.2d 815, 823–824 (Mo.1966); *James v. Turilli*, supra, 473 S.W.2d at 763[13]. The trial of this case took approximately three days; the attorneys quite literally went back and forth over every aspect of the casualty. The first collision occurred about 220 feet north of the collision with the Elayer vehicle and without going again into evidentiary detail, the two collisions are so factually disparate in time, distance and nature that we believe the "wrong side of the road" submission could hardly have been understood by a jury of reasonable men and women as referring to anything but defendant Brewer's collision with the plaintiffs' vehicle.

We do not approve Instructions 2 and 3; it would have been relatively simple to require the jury to find that defendant Brewer's automobile "was on the wrong side of the road at the time of the collision with plaintiff Laney M. Deskin's vehicle." All we hold in this case is that given the detailed facts, we do not believe a jury would have been misled.

Moreover, the question whether instructions are confusing is addressed in the first instance to the trial court's discretion. *Trump v. Ballinger*, 317 S.W.2d 355, 357–358[2] (Mo.1958); *James v. Turilli*, supra, 473 S.W.2d at 763[14]; *Edie v. Carlin*, 369 S.W.2d 610, 613–614[1–3] (Mo.App. 1963). The trial court passed on the very contention addressed to this court. It refused a new trial and we cannot say there was an abuse of that discretion.

Defendant Brewer has briefed two additional points. One has to do with a bit of unwarranted horseplay in which the other attorneys engaged; the other deals with the argument made by defendant Elayer's counsel. Both these points are insignificant and it would serve no useful purpose to discuss them.

Defendant Elayer raises three questions on appeal. First, she contends that the trial court erred to her prejudice in permitting plaintiff Laney Deskin to testify that she and her husband were the parents of two children, and that the children were in the courtroom. Defendant Elayer's specific objection is that such evidence was not relevant to any issue in the case.

Plaintiff Laney Deskin was asked if she and her husband had two children, and she was asked their ages. Plaintiff Laney answered that she and her husband had two children; they were in the courtroom; one child was 13 years of age, the other 11. Such evidence is often held inadmissible on the ground that it is irrelevant and calculated to arouse the prejudice of the jury. *Lewis v. Hubert*, 532 S.W.2d 860, 868[16, 17] (Mo.App.1975). Nevertheless the general rule declaring evidence of family status or number of people in a family inadmissible does not apply when that evidence is relevant or pertinent to an issue raised in the case. *Bush v. Anderson*, 360 S.W.2d 251, 255[5] (Mo.App.1962); *Kingsley v. Kansas City*, 166 Mo.App. 544, 549, 148 S.W. 170, 171[1] (1912). Here, the plaintiffs made a good faith effort to show it became necessary for plaintiff Howard Deskin to care for the children after their mother was injured, and that he sustained a pecuniary loss as a result. The general rule does not apply, and we cannot say defendant Elayer was prejudiced by the admission of evidence concerning plaintiffs' family status.

Another point raised by defendant Elayer deals with the admission of evidence. Defendant Elayer's father testified in his daughter's behalf. Mr. Elayer was asked to "[T]ell this Jury what you saw about a hay truck while you were there at that scene [of the accident]." The witness' answer was: "Me and the policeman walked back up to my car and—started, and this truck come [sic] over the hill real easy, put his brakes on and just slipped right down into the back of my car." The witness was immediately cross-examined by counsel for plaintiffs,

who inquired whether the hay truck had dented defendant Elayer's vehicle. It had, and over objection, plaintiffs' attorney was permitted to ask if the witness had demanded and received payment from the driver of the hay truck.

Defendant Elayer would have us believe that her questions to the witness elicited relevant and admissible evidence, but plaintiffs' development of the rest of the collateral transaction was prejudicial. Doubtless the slickness of the streets was relevant, but counsel's interrogation of Mr. Elayer—and a good deal of other testimony presented by both defendants—was in fact an attempt to demonstrate that the whole occurrence was an unavoidable accident. If our Supreme Court had not indirectly but firmly turned its back upon the unavoidable accident doctrine, at least in vehicular casualties, M.A.I 1.01 (2d ed.1969); *Suchara v. St. Louis Pub. Sv. Co.*, 410 S.W.2d 93, 94–95[1] (Mo.App.1966), it might have been that both defendants could have submitted, or at least argued, that the whole incident was unavoidable. In the circumstances, however, defendant Elayer, having opened up the unrelated, collateral matter, is in no position to complain because the plaintiffs developed the transaction to the extent necessary to dispel the inference that defendant Elayer could not have been negligent because Broadmoor was so slick. *Watson v. Landvatter*, 517 S.W.2d 117, 122[8] (Mo.banc 1975); *Biener v. St. Louis Pub. Sv. Co.*, 160 S.W.2d 780, 785[6] (Mo.App.1942). There is no merit in this point.

Finally, defendant Elayer argues at length that the plaintiff Laney Deskin must be held contributorily negligent as a matter of law. We must credit defendant Elayer's counsel with an industrious effort to demonstrate the merit of this point, but it would serve no useful purpose to set the argument out at length and consider the reasonable inferences which might have been drawn from the evidence recited. All the witnesses, parties and observers alike, were testifying to an event which occurred several years before the trial; their statements were composed of "estimates," "best judgments" and "best recollections." It is sufficient to say that extrapolations based on such evidence cannot convict the plaintiff of contributory negligence as a matter of law. *Zumault v. Wabash R. Co.*, 302 S.W.2d 861, 864–865[6] (Mo.1957); *Smith v. Siercks*, 277 S.W.2d 521, 525[13] (Mo.1955); *Johnson v. Bush*, 418 S.W.2d 601, 605[5] (Mo.App.1967).

We conclude there was no error materially affecting the merits of the action in any respect argued here; accordingly, the judgment is in all respects affirmed.

FLANIGAN, C. J., and BILLINGS, MAUS, GREENE and PREWITT, JJ., concur.

TITUS, J., dissents and joins in separate dissenting opinion of HOGAN, J.

HOGAN, Judge, dissenting.

I dissent, respectfully but vigorously. To my mind the court has been taken with a seizure of very doubtful omniscience in deciding how the jury "surely must have understood" the charge, and I will try, very briefly, to state why I think so.

This action is not complicated, in a legal sense, but the casualty involved three automobiles, three drivers and two collisions, which is to say there was a good deal of motion to be sorted out mentally by the triers of fact. Although counsel is not specific, plaintiffs apparently chose the method of submission suggested and illustrated by present MAI 35.03, which I take to be appropriate when there are multiple defendants and several separate negligent acts are submitted in different instructions. See: *O'Dell v. Custom Builders Corp.*, 560 S.W.2d 862, 873–874[11] (Mo.banc 1978). One of the cardinal principles of the MAI is that the fact issues should be submitted briefly and *accurately*, *Stemme v. Siedhoff*, 427 S.W.2d 461, 466[8] (Mo.1968), and the jury should be advised of defendants' duty or breach of that duty in concise and unambiguous words and phrases which do not require further classification if that is possible. *Black v. Kansas City Southern Ry. Co.*, 436 S.W.2d 19, 27[13][14] (Mo.banc 1968).

It is certain that the format suggested by MAI 35.03 requires that the parties be singled out and identified in the verdict-directors, *Cash v. Bolle*, 423 S.W.2d 743, 744–745 (Mo.banc 1968), and I have the view that the negligent acts relied on should be as carefully isolated and spelled out. Plaintiffs' contention that they were simply following the requirements of the MAI overlooks that it is they who undertook to modify MAI 17.13 in order to submit the multiple negligent acts hypothesized in Instructions 2 and 3. Inasmuch as the modification is plaintiffs, it is *they* who have the burden to make it perfectly clear no prejudice resulted. *Brown v. St. Louis Public Service Company*, 421 S.W.2d 255, 259[3] (Mo.banc 1967); *Wills v. Townes Cadillac-Oldsmobile, Inc.*, 490 S.W.2d 257, 262 (Mo. 1973).

I agree that we are entitled to consider how the instructions would be understood by a jury of reasonably intelligent men and women, but the converse is also true—the language of instructions must be unambiguous to such a jury, *Woodford v. Illinois Central Gulf R.R. Co.*, 518 S.W.2d 712, 716[6, 7] (Mo.App.1974); *R-Way Furniture Company v. Powers Interiors, Inc.*, 456 S.W.2d 632, 639[10] (Mo.App.1970), and I take it defendant Brewer's claim of error should be assessed by considering the whole charge. *Jefferson v. Biggar*, 416 S.W.2d 933, 939[5] (Mo.1967).

The petition alleged injury as a direct result of the defendants' joint and concurring negligence and the plaintiffs' submission was framed so as to permit recovery if: a) defendant Elayer violated the stop sign on Broadmoor, or b) defendant Brewer failed to act to avoid collision with defendant Elayer after danger of collision became apparent, or c) defendant Brewer was on the wrong side of the road at the time of "*the* collision." To elaborate: as against defendant Elayer, plaintiffs submitted violation of the signal ("stop sign") on Broadmoor as prescribed by MAI 17.01, and added the third option provided by MAI 19.01. Instructions 3 and 4, already fully set out, submitted as a multiple negligent act [MAI 17.02] defendant Brewer's: a)

failure to swerve after collision with Elayer became apparent [MAI 17.04] or b) being on the wrong side of the road at the time of *the* [unspecified] collision [MAI 17.13, modified]. Instructions 3 and 4 were also modified by adding the third option provided by MAI 19.01. It should also be noted that defendant Elayer submitted plaintiff Laney Deskin's contributory negligence [MAI 32.-01 and 17.04, modified] in failing to act after danger of collision [with whom *again* unspecified] became apparent. Further, the issue of damages was submitted, as to plaintiff Laney Deskin, by MAI 4.01, which refers to a single "occurrence." Such use of MAI 4.01 is apparently contemplated by MAI 35.03 because the whole casualty is regarded as a single transaction. *O'Dell v. Custom Builders Corp.*, supra, 560 S.W.2d at 873.

Remembering that the plaintiffs' evidence established the occurrence of *two* collisions, both of which were the subject of a good deal of testimony, we may then suppose that a reasonably intelligent jury, reading the instructions as given, would first read Instructions 2 and 3, referring to "collision with the Elayer automobile" and simultaneously to "the" collision, would have noted that Instruction 7 simply refers to a collision, and finally would have read Instruction 10, which refers to a single occurrence. My colleagues hold that any reasonable jury would understand in this context that the second alternative submission in Instructions 3 and 4 referred to *another* collision, 220 feet south of the first, with another vehicle. I do not believe that, nor do I believe that ambiguous and confusing instructions can be cured by oral argument. *Wills v. Townes Cadillac-Oldsmobile, Inc.*, supra, 490 S.W.2d at 262. Neither do I understand that the rule of deference stated in *Edie v. Carlin*, 369 S.W.2d 610[613–614] (Mo.App.1963), extends to prejudicial or unauthorized modifications of the MAI. *Chappell v. City of Springfield*, 423 S.W.2d 810, 811[2] (Mo.1968). I therefore dissent.