Patricia Ann **WATSON** et al., Appellants,

v.

Henry W. **LANDVATTER** et al.,
Respondents.

No. 58668.

Supreme Court of Missouri,
En Banc.

Dec. 16, 1974.

Rehearing Denied Jan. 13, 1975.

Donald S. Hilleary, Charles E. Roth, Clayton, for appellants.

Walter Wehrle and Robert W. Henry, Clayton, for respondents.

HOLMAN, Judge.

Action to establish a written instrument as the will of Charles G. Landvatter. A trial resulted in a jury verdict in favor of defendants. Plaintiffs appealed to the St. Louis District of the Court of Appeals and that court adopted an opinion affirming the judgment. Upon application of plain-

tiffs-appellants we ordered the case transferred to this court. It will be finally determined here the same as on original appeal. We affirm.

Portions of the opinion of the court of appeals have been adopted without the use of quotation marks.

On May 5, 1958, Charles G. Landvatter executed a will in proper form with proper attestation. The material parts of that instrument (showing subsequent alterations) read as follows:

"SECOND: I give, devise and bequeath all of my property, real and personal, wherever situated and whether acquired before or after the execution of
Alice - C.G.L.
this will, to my wife ~~Jennie~~ Landvatter, in fee simple absolutely, if she survive me; but if she shall predecease me, then I give, devise and bequeath all of my such
step son Robert Klausner
property to my ~~nieces~~ and ~~nephews, Pa-~~
& step Daughter Linda Smith & step
~~tricia, Gina, Shelley, Joseph, Lee Anne,~~
Daughter Debra Mangin - C.G.L.
and ~~Roby Bolatto,~~ and ~~Ronald, Roger,~~ and ~~Mary Louise Landvatter,~~ and any other children of my ~~brothers in law,~~ ~~James Bolatto,~~ and ~~Mike Bolatto,~~ and my ~~brother, Henry Landvatter;~~ share and share alike; providing they survive me, in fee simple absolutely; but if they also shall all predecease me, then I give, devise and bequeath all of such property, in fee simple absolutely, to my heirs at law.

*    *    *    *    *    *

"FOURTH: I hereby name my wife,
Alice - C.G.L.
~~Jennie~~ Landvatter, as executrix of this will; but if she should die, resign, be disqualified or unable or unwilling to act
Brother, Henry W.
as such, then I nominate my ~~sister, Mrs.~~ Landvatter as Executor—O.K.—C.G.L.
~~George E. Johnson as executrix~~ of this will in her place and stead.

*    *    *    *    *    *

"IN WITNESS WHEREOF, I have
22nd
hereunto set my hand and seal this ~~5~~
Jan 1970 — C.G.L.
day of ~~May, 1958.~~"

Charles and Jennie Landvatter were divorced on May 5, 1969. On October 3, 1969, Charles and Alice Landvatter were married. Charles Landvatter died on September 3, 1970. When his will was later filed with the probate court, there were several changes that had been made by interlineation in ink on the face of the will. The probate court rejected the will. The plaintiffs then instituted this action to have the will as originally written declared the last will and testament of Charles Landvatter.

Attached to the petition in this case was a copy of the May 5, 1958 will as altered which was later introduced into evidence as plaintiffs' Exhibit 1. The alterations which appear on the will have been shown on the foregoing copy of parts thereof. There were no attesting witnesses to these handwritten changes.

The plaintiffs are Patricia Ann Watson, Regina Bolatto, Michele Bolatto, Michael Bolatto, Leanne Bolatto and Roberta Stanley (nieces and nephews of Jennie) who were contingent beneficiaries under the will as originally written. They brought this action against Alice Landvatter, Henry Landvatter, Jennie Landvatter and others.

Jennie Landvatter testified that no children were born of her marriage to Charles. She gave the details of the divorce settlement she received from Charles which appears to have been substantial and included $250 per month alimony. She also testified that she had made a claim against Charles Landvatter's estate, which claim had been paid, and she did not expect to receive anything from the estate by reason of the will if it were probated.

Alice Landvatter testified that she and Charles had many discussions about his

will and they consulted an attorney, Vernon Kelly, in regard to making a new will but none was prepared at that time. She stated that on January 22, 1970, Charles made the handwritten changes to the will in her presence and the presence of her daughter. At that time, he stated that he was going to "will" everything to Alice and that Jennie Landvatter's nieces and nephews were "no longer his relatives."

Linda Ann Matthews, Alice Landvatter's daughter, confirmed her mother's testimony as to the events of January 22 and Charles' statements made at that time.

Vernon Kelly had represented Charles Landvatter in his business dealings and had represented Jennie Landvatter in the divorce. He testified that Charles and Alice visited his office and discussed making new wills. He stated that he was retained by Alice after Charles died to be administrator of the estate; that he filed the altered will with the probate court and that the will was rejected by that court.

Mike Bolatto, Wilma Bolatto (James Bolatto's widow), Patricia Watson and Michael Bolatto testified for plaintiffs. Their testimony related to Charles Landvatter's feelings for Jennie's nieces and nephews and pointed to many specific instances where these feelings were manifested by an act of affection or the giving of a gift.

The jury found that the document dated May 5, 1958, was not the last will and testament of Charles G. Landvatter and the court entered judgment pursuant to that verdict.

The first point briefed by plaintiffs is that the trial court erred in overruling their motion for a directed verdict at the close of the evidence. They take the position that the alterations made by Charles on January 22, 1970, had no effect on the validity of the will and hence, as a matter of law, the will as originally written should be declared to be the last will of Charles G. Landvatter and probated as such. On

the other hand it is contended by defendants that the evidence raised an issue of fact as to whether testator by his actions revoked the will and that said issue was properly submitted to and decided by the jury.

All parties agree that the substitutions written on the face of the will cannot be given effect because the will was not at that time or thereafter attested or reattested in accordance with the requirements of Section 474.320, RSMo 1969, V.A.M.S.

In support of their contention plaintiffs rely on the doctrine of dependent relative revocation. A very general statement of the doctrine is that, "When a will, or portions thereof, are canceled or mutilated in order to change the will in whole or in part, and the attempt fails for want of due authentication, or other cause, this effort to revoke in whole or in part will be treated as relative and dependent upon the efficacy of the new disposition intended to be substituted; and hence, if the attempted disposition is inoperative, the revocation fails also, and the original will remains in force." 62 A.L.R. 1401. The doctrine has been discussed in the following Missouri cases: Banks v. Banks, 65 Mo. 432 (1877), Varnon v. Varnon, 67 Mo.App. 534 (1896), Woodson v. Woodson, 363 Mo. 978, 255 S. W.2d 771 (1953) and Board of Trustees of Methodist Church v. Welpton, 284 S.W.2d 580 (Mo.1955). In Banks the testator revoked his will by burning while in the process of completing and attesting another will which was materially different. Probate of the second will was denied. The court refused to apply the doctrine because the evidence did not indicate that the revocation was conditioned upon the efficacy of the subsequent will. In Varnon the testator tore out one page of his will and substituted another page without further attestation. The court applied the doctrine saying: ". . . he only intended to revoke page 5 by the immediate substitution of another page with the change indicated. His intention to revoke depended upon, and was intended to be made by, the substituted

paper. If that was noneffective, then no revocation was had. The result is that page 5 as first written is unrevoked . . . " 67 Mo.App. 538. A change was made in the amount of certain bequests in Woodson without there being a reattestation. The court in its decision stated that, "In the instant case there was no complete obliteration of the will except as to paragraph 4, and the testatrix' 'explanation' endorsed on the will shows she intended the original will to remain in effect with the 'gift' amounts changed. Such changes come within the doctrine of dependent relative revocation. That is to say, while the testatrix here intended to 'revoke', in the sense of change, the *amounts* of particular original bequests and to substitute different amounts in their stead, yet since the attempted changes were inoperative for failure to have the will reattested, the amounts originally specified in the will remained in effect if ascertainable." 255 S.W.2d 777.

In the Welpton case there was evidence indicating that testatrix destroyed her will because the only property devised therein had been conveyed by deed. After her death the deeds were set aside. In a suit to establish the will the trial court directed a verdict for defendants. On appeal we held that the evidence was sufficient to require an issue to be submitted to the jury as to whether testatrix intended an absolute revocation of the will or if its destruction was solely attributable to the execution of the deeds.

As we understand their briefs plaintiffs contend that the doctrine of dependent relative revocation is an arbitrary rule of law so that when, as a part of a single plan, the testator makes changes in his will which are not valid or effective the will must be probated as originally written. We do not agree. It is our view that the intent of the testator is an important factor which may present a factual issue concerning revocation. The position taken by plaintiffs is probably the result of the fact that the Varnon and Woodson cases did not make clear the importance of the element of intent.

We have read many cases, texts and annotations discussing this doctrine and approve the following: " . . . while the doctrine of dependent relative revocation is a rule of presumed intention, rather than a substantive rule of law, based on the theory that all revocatory acts are essentially equivocal, the doctrine is subordinate to the rule which makes the intention of the testator paramount, so that its application is limited to cases in which it can operate in furtherance of the intention of the testator. In other words, the presumption of intention is a rebuttable one, and will not apply where there is some actual evidence on the question of the testator's intention; and inquiry should be made as to what the testator would have desired had he been informed of the true situation.

"The doctrine does not create an artificial presumption or rule of law, but is rather the formulated expression of the result of the experience of the courts in finding and effectuating the intention of the testator. The doctrine is functionally a rule of interpretation of the intention of the testator, or to aid in the determination of the true intent of the testator, and seeks to avoid intestacy where the testator's acts in relation to revocation of a will seems conditional or equivocal. . . . The doctrine should be applied with caution; and, it has been said, the tendency of modern cases is clearly to narrow the scope of its application. Thus, the mere fact that the testator intended to make a new will, or made one which failed of effect, will not alone, in every case, prevent a cancellation or obliteration of a will from operating as a revocation; . . . The doctrine is particularly applicable where the testator, in the execution of the new will to supersede the old one, did not change the testamentary purpose but only minor details, and essentially repeats the same dispositive plans, so that it is clear that the

first will was revoked only because the second duplicated its purpose, and that the testator would have preferred the first will to intestacy. Conversely, the doctrine has been held inapplicable in a case in which the new will was materially different from the old one." 95 C.J.S., Wills, § 267, pp. 36, 37, 38. See also, Annotations in 62 A.L.R. 1367, 1401, supra, 115 A.L.R. 721 and 24 A.L.R.2d 554, Atkinson on Wills 2nd Ed. (1953), Sec. 88, p. 452 and 33 Harvard Law Review 337 (Prof. Warren, 1920). A classic case for application of the doctrine is Flanders v. White, 142 Or. 375, 18 P.2d 823 (1933).

In the case before us the evidence shows that testator's family situation had changed radically between the time of the execution of the original will and the date of the alterations. The sole primary legatee, Jennie, had divorced him and he had made a property settlement and was paying her substantial alimony. He had thereafter married Alice. His statements clearly indicate that he desired to revoke the legacy to Jennie and that he did not continue to consider her nieces and nephews to be his kin. While he did not appear to have any specific reason for desiring to exclude his own niece and nephews as contingent beneficiaries it would not be unreasonable to conclude that he preferred to name the children of his new wife in their stead. It is also significant that the alterations were not minor but resulted in a complete change of all of the legatees named in the original will.

In the situation presented, there was ample evidence to support the submission to the jury of the issue as to whether Charles, by making the alterations in question intended to cancel the entire document as originally written. We accordingly rule that the court did not err in overruling plaintiffs' motion for a directed verdict and in submitting the aforementioned issue to the jury.

■ Plaintiffs' next contention is that the trial court erred in admitting testimony that the probate judge had rejected the will and in admitting a certified copy of the rejection order.

Prior to the trial in this case, counsel for the plaintiffs and defendants met in Judge Hess' chambers. The judge at that time ruled that the rejection order should not be discussed before the jury. However, plaintiffs' counsel questioned Attorney Kelly in detail during the trial concerning the filings of the will with the probate court. Plaintiffs elicited in this cross-examination testimony that Mr. Kelly knew that an application for letters of administration must be filed with the probate court; that the will was filed with that court; and, that Mr. Kelly gave the will to either the probate judge or clerk. On redirect, Mr. Kelly testified over objection of the plaintiffs' counsel that the probate judge rejected the will and that he had a copy of the rejection in his file. That copy was marked as an exhibit but not offered or admitted in evidence.

■ It is clear that a party cannot elicit irrelevant evidence, constituting part of an entire transaction, to his benefit and then object to a continuation of evidence of that transaction by the opposing party to refute the adverse inferences which might arise from the incomplete nature of the evidence he introduced. State v. Odom, 353 S.W.2d 708, 711 (Mo.1962); Eddings v. Keller, 400 S.W.2d 164, 173 (Mo.1966). When a part of an improper subject of inquiry has been voluntarily broached by one party, the other party may examine the remainder of that subject of inquiry to the end that the entire transaction may be analyzed more dependably. Kelley v. Hudson, 407 S.W.2d 553, 556 (Mo.App.1966).

The defendants here were merely continuing the line of questioning initiated by the plaintiffs in order to make the jury aware of the entire transaction and dispel any erroneous inferences which may have been drawn from the incomplete character of plaintiffs' questions. The jury could

have inferred from the answers elicited by plaintiffs' attorney that the will had been admitted to probate by the probate court. The defendants were entitled to rebut this improper inference by showing that the will had been rejected. Plaintiffs, however, contend that the rule discussed above is not applicable because defendants produced evidence in the direct examination of Mr. Kelly concerning the filing of the will and hence they were required to develop the subject further on cross-examination. We do not agree. The testimony plaintiffs refer to is as follows:

"Q. All right. And it [the will] has not been changed from the date that you got it out of the safe deposit box following his death to the present time, is that right?

A. That's right. I came to the Probate Court after we'd gone through the safe deposit box, and this is one of the documents that I brought with me to the Probate Court."

It is apparent that the part of the answer which mentioned taking the will to probate court was completely unresponsive. In that situation defendants should not be charged with having initiated the subject and if plaintiffs desired relief in regard thereto they should have moved the court to strike the answer and admonish the jury to disregard it. This point is ruled adversely to plaintiffs.

◼ As their next point plaintiffs assert that the court erred in giving Instruction No. 3 in that there was not substantial evidence to support such an instruction. Instruction No. 3 read as follows:

"Your verdict must be that the document in issue as originally written on the 5th day of May, 1958, is not the Last Will and Testament of Charles G. Landvatter, if you believe:

"That Charles G. Landvatter drew lines through all the named beneficiaries of said document with the intent to can-

cel any gift, devise or bequest to said beneficiaries and with the intent to cancel the entire document as originally written."

Plaintiffs argue that Charles Landvatter wanted the will to remain in force as altered and therefore could not have intended to cancel the will.

It is obvious that this instruction properly submitted the issue of the decedent's intention as heretofore stated in the discussion of dependent relative revocation. There is abundant evidentiary support for the proposition that he intended to cancel the entire document as *originally written* and was merely utilizing the document as a form for a new disposition. We, therefore, rule this point against plaintiffs.

◼ The final contention of plaintiffs' is that the court erred in permitting Alice to testify, over objecton, to a conversation with Charles prior to January 22, 1970, as follows:

"A. *Well, we went to Mr. Vernon Kelly's office to make a new will. Mr. Landvatter wanted me to will everything I owned to him in the event of my death, and he would will everything he owned to me in the event of his death. And I couldn't do that because I have three children and I wanted to see that my children were always taken care of.*

"So, he said; 'I want you to have everything.' And I told him I had children, I couldn't do that." Plaintiffs say that such statements are admissible if made contemporaneously with acts alleged to constitute revocation of the will but otherwise are hearsay and constitute reversible error. Although there is support for admission of such prior declarations, Peters v. Dodd, 328· S.W.2d 603 (Mo.1959), and Atkinson on Wills (2nd Ed.1953) Sec. 86, p. 441, we have concluded that we need not decide that question. This for the reason that testimony was given by the same witness as to the same declarations repeated by the

testator at the time he made the changes in the will. That testimony was clearly relevant and admissible. In that situation plaintiffs were not prejudiced by admission of the prior testimony.

Judgment affirmed.

All concur.