**J. Dave PETTERSON and Sandra Petterson, Appellants,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Respondent.**

**No. WD 39450.**

Missouri Court of Appeals, Western District.

Feb. 9, 1988.

James B. Chancellor, Kansas City, for appellants.

June Clark, Kansas City, for respondent.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

GAITAN, Presiding Judge.

This case originated when the plaintiffs/appellants brought suit against defendant/respondent State Farm Fire & Casualty Company and State Farm General Insurance Company for the proceeds of two insurance policies for an alleged burglary loss. The suit was in two counts.

Count I made claim on a renter's insurance policy issued by State Farm General Insurance Company. Count II made claim on the personal articles policy issued by respondent. In the first trial the jury returned a verdict for both defendants. Appellants appealed the original verdict only as to this respondent. On December 3, 1985, this Court reversed and remanded as to Count II and ordered a new trial. *Petterson v. State Farm General Insurance Co.*, 701 S.W.2d 764 (Mo.App.1985). The reversal was based on an erroneous jury instruction. On retrial there was a second verdict in favor of respondent. The appellant appeals alleging the trial court erred by: (1) giving an affirmative converse instruction unsupported by the evidence, and (2) permitting testimony that was not relevant to the issue before the court. We affirm.

Appellants acquired a renter's policy on the contents of their apartment on March 4, 1983, from State Farm agent Dale Conway. Three weeks later, on March 29, 1983, appellant Dave Petterson returned to Mr. Conway's office to obtain additional replacement cost coverage to supplement his original policy. On April 7, 1983, a personal articles policy was issued covering specific pieces of jewelry. On July 1, 1983, appellant Dave Petterson returned to Mr. Conway's office in order to request coverage for additional items not originally specified under the personal articles policy.

On July 13, 1983, appellants reported to the police and to agent Conway that their apartment had been burglarized. Appellants submitted their claims under both policies with an itemized list of the allegedly stolen property. Both claims were denied as a result of misrepresentation by appellants. Appellants claimed $17,937.00 in itemized stolen jewelry under the policy at issue.

Respondent denied the claim based on the misrepresentation clause in the policy which states:

Concealment or Fraud.

This entire policy will be void if, whether before or after a loss, you have intentionally concealed or misrepresented a mate-rial fact or circumstance relating to the insurance.

Kimberly McClure, an employee with Antin House of Video at the time of the incident, testified she became friends with Dave Petterson. She further testified that Dave Petterson wanted to finance a trip to England with his wife. Petterson asked that Ms. McClure "store" some things that were going to come up mysteriously missing from his apartment. Dave Petterson specifically asked Ms. McClure to keep an Atari game, a video recorder and a microwave oven which were going to "disappear". Ms. McClure testified that Mr. Petterson visited her on one occasion, at which time he suggested that she could use his microwave after the "disappearance". Ms. McClure, already owning one microwave and not wanting anything to do with Mr. Petterson's plan, declined to accept.

Ms. McClure testified that she learned of an alleged robbery at the Petterson apartment thorough a conversation between Mr. Wakeley (manager of Antin House of Video) and Mr. Petterson.

On cross-examination, Dave Petterson was impeached with his prior testimony that he had previously "fibbed" under oath. However, counsel for respondent carefully avoided inquiry at that point as to the specific transaction Dave Petterson "fibbed" about. Counsel for appellants, then, on re-direct examination, inquired as to what the fib concerned. After such inquiry by counsel for appellants, counsel for respondent delved further into the area. At the conclusion of all the evidence, the jury found for the respondent. This appeal followed.

■ Appellants claim error in the giving of Instruction No. 8 because there was no evidence that a burglary did not occur. Instruction No. 8 stated the following:

Your verdict must be for the defendant if you believe:

First, plaintiff, David Petterson, represented that a burglary occurred, and

Second, the representation was false, and

Third, plaintiff, David Petterson, knew it was false, and

Fourth, the false representation was material, and

Fifth, plaintiff, David Petterson, intended to deceive defendant.

■ Instruction No. 8 was a proper affirmative converse instruction because if no burglary occurred the plaintiffs' claim would be defeated. An affirmative converse instruction must submit an hypothesized ultimate issue which, if true, would defeat plaintiff's claim. *Oliver v. Bi–State Development Agency*, 494 S.W.2d 49, 52 (Mo.1973). There was independent evidence that a burglary did not occur. Kim McClure's testimony indicated that Dave Petterson told her that certain items were going to "mysteriously come up missing" from his home. Ms. McClure testified that Dave Petterson had specifically suggested that he and his wife would be able to take a trip to England as a result of those items disappearing. In fact, Dave Petterson asked Ms. McClure to "keep some things that were going to be on that list." McClure further testified that Dave Petterson wanted her to store an Atari game, a video recorder and a microwave oven. Both the Atari and the VCR were reported stolen. The microwave oven was left on the bedroom floor. Clearly Ms. McClure's testimony provides independent evidence from which it could be inferred that appellants did not have a burglary.

A review of Ms. McClure's testimony fulfills the independent evidence requirement. Independent evidence must be established that, if believed to be true, would negate any right to recovery by the plaintiffs. *Shearin v. Fletcher/Mayo/Associates Inc.*, 687 S.W.2d 198, 202 (Mo.App.1984). If the jury believed Ms. McClure's testimony, they also believed that a burglary did not occur. Therefore, respondent's affirmative converse instruction was proper.

Appellants also contend the trial court erred in allowing questions concerning "other items reportedly stolen that were not covered by the insurance policy in question. . . ."

■ Evidence that appellants claimed that a VCR and an Atari game were stolen was relevant to corroborate the testimony of Kimberly McClure that the "burglary" was a scheme by appellants to obtain insurance proceeds. Evidence is relevant if the fact it tends to establish in turn tends to prove or disprove a fact in issue, or to corroborate evidence which is relevant and which bears upon the principal issue. *Lawson v. Schumacher & Blum Chevrolet, Inc.*, 687 S.W.2d 947, 951 (Mo.App.1985). State Farm agent Dale Conway's testimony that appellants made claims for other items not covered by the personal articles policy and testimony by appellants that a VCR and an Atari game were also allegedly stolen corroborate Kim McClure's testimony. Further, such testimony is relevant because it corroborates McClure's testimony establishing that the alleged burglary was part of a scheme or plan to defraud State Farm. Additionally, in the original trial appellants admitted there may have been some evidence that there was no burglary. *Petterson v. State Farm General Insurance Co., supra,* 701 S.W.2d at 766. Whether or not a burglary occurred was directly at issue and, therefore, was relevant.

■ Appellants further allege prejudicial error in allowing respondent to question Dave Petterson concerning the circumstances surrounding the purchase of the allegedly stolen VCR. However, a review of the transcript indicates counsel for appellants initially waived any objections and later "opened the door" during re-direct examination of Dave Petterson. On cross-examination of Dave Petterson, the following questions were asked and answered without objection:

Q. And did you have some conversation with Mr. Wakeley at Antin House of Video after this theft loss.

A. Yes, Ma'am. I asked him for a receipt, because I couldn't find mine.

Q. Do you know if Miss McClure was present at that time?

A. I have no idea, ma'am.

Q. Did you give Miss McClure any instructions after the theft, as to what

she should tell anyone who asked her about the video cassette recorder you had reported stolen?

A. No, Ma'am.

Mr. Petterson's credibility was impeached when he admitted, without objection on cross-examination, that he had given the following prior testimony:

Q. All right. Let me see if I can help you refresh your recollection, Mr. Petterson. Do you recall me asking you these questions, and you given me these answers:

Question: Sir, you say now that that was a fib you told so you wouldn't get your wife mad?

Answer: That's correct.

Question: Is it okay to tell a fib under oath?

You Answer: If you feel that it justifies it—sometimes; yes.

Question: So, in some circumstances, when it justifies it, it's okay to fib under oath? Is that right, Mr. Petterson?

Answer: I felt that at the time, yes.

Question: Okay. And there's some circumstances that it's okay to fib, then?

Answer, Yes. I felt that at the time; yes.

Do you recall me asking you those questions and you giving those answers?

A. Yes, ma'am.

Q. And that's what you testified to under oath—that sometimes there are circumstances which justify, in your words, fibbing; correct, sir?

A. At that time, yes.

Q. What's the difference between fibbing to a jury under oath, and lying to a jury under oath, Mr. Petterson?

A. I have no idea, ma'am. I guess there isn't any.

On redirect, appellant's counsel then conducted the following inquiry:

Q. So you testified you fibbed so your wife wouldn't get mad at you? Is that right?

A. Yes, sir.

Q. That was over some kind of a cash transaction on some piece of merchandise you bought that you didn't want her to know about; right?

A. Yes, sir.

Q. Didn't have anything to do with the jewelry, did it?

A. No, sir.

Q. Or furs, or anything else?

A. No, sir.

Respondent's counsel conducted his re-cross-examination as follows:

Q. Let's talk about what you fibbed about, Mr. Petterson, since your attorney brought it up. You made claim to State Farm under a homeowner's policy for a VCR that you alleged was stolen from you, didn't you?

MR. CHANCELLOR: Your Honor, I object. It's irrelevant. I brought it up; it was not about jewelry.

THE COURT: Overruled.

Q. (By Ms. Clark) Would you like me to repeat the question?

A. Yes, please.

Q. You made a claim to State Farm under a separate policy for a claim that is not before this jury today, for a video cassette recorder, didn't you, sir?

A. Yes, ma'am.

Q. And you represented to Mr. Fulkerson in your statement, and to me in your statement under oath, that you had purchased that video cassette recorder for cash at Antin House of Video, didn't you, sir?

A. Yes, ma'am.

Q. And you submitted a receipt to me for that, which you said was the receipt for the video cassette recorder, didn't you sir?

A. Yes, ma'am.

Q. And when Mr. Fulkerson went to Antin House of Video and discovered that you'd given him a bogus receipt—at that point, when I took your deposition, you admitted you'd lied, didn't you, sir?

A. I admitted I'd lied about how I paid for it; yes.

Q. And you also admitted, when we had the documents there in front of you, that there were in fact two separate receipts for that video cassette recorder; correct, sir?

A. I do not remember, ma'am.

Q. In fact, sir, you went back to Antin House of Video after the theft of the VCR and asked Larry Wakeley to make you a receipt for a video cassette recorder that was more expensive than the one you'd actually purchased, didn't you, sir?

A. I asked Larry Wakeley to make a receipt, a receipt, for what I had purchased—period.

Q. And you also asked Kim McClure that if anybody asked her about the two receipts for video cassette recorders, that she should say that you gave her the first one as a gift, didn't you, Mr. Petterson?

A. No, ma'am.

MS. CLARK: I have no other questions.

MR. CHANCELLOR: I have no further questions.

THE COURT: Step down, please.

Under Missouri law, wide latitude is afforded the cross-examination of witnesses subject to the authority of the trial judge. When the complaining party introduces or opens up an issue, the opposing party is entitled to inquire further so long as the inquiry has some reasonable bearing upon the issues in the case or tends to impeach or discredit that witness. *See Harris v. Quality Dairy Co.*, 423 S.W.2d 8, 11–12 (Mo.App.1967). See also *State v. Hurt*, 668 S.W.2d 206, 214 (Mo.App.1984) and *State v. Mick*, 546 S.W.2d 508, 509 (Mo.App.1976) in which it was held that when an issue is raised on re-direct examination, the opposing party is entitled to develop the issue further on re-cross-examination. In *Watson v. Landvatter*, 517 S.W.2d 117 (Mo. banc 1974), the defendants continued a line of questioning initiated by the plaintiffs. Rejecting plaintiffs' claim of error, the Court held:

It is clear that a party cannot elicit irrelevant evidence, constituting part of an entire transaction, to his benefit and then object to a continuation of evidence of that transaction by the opposing party to refute the adverse inferences which might arise from the incomplete nature of the evidence he introduced.

*Id.* at 122. *See Jackson County v. Meyer*, 356 S.W.2d 892, 897 (Mo.1962); *Vanneman v. W.T. Grant Co.*, 351 S.W.2d 729, 731 (Mo.1961); *Bowyer v. Te-Co., Inc.*, 310 S.W.2d 892, 895 (Mo.1958). As the foregoing cases make clear, counsel for appellants may not proceed to question his own witness on an issue and then object when opposing counsel seeks to inquire into the same subject matter. When respondent's counsel impeached Mr. Petterson with his prior testimony by asking him why he had "fibbed" under oath, counsel for appellants failed to object. Moreover, counsel for respondent carefully avoided any inquiry into the specific transaction Dave Petterson "fibbed" about. On re-direct examination, however, counsel for appellants asked Mr. Petterson whether the "fib" was "... over some kind of a cash transaction on some piece of merchandise you bought you didn't want her [Petterson's wife] to know about". As counsel for appellants properly noted in his objection to the inquiry, "I brought it up." Only after the door was opened on re-direct did respondent pursue the subject. Consequently, the inquiry was proper. The evidence was relevant and material for the reasons previously discussed. The trial court did not abuse its discretion in admitting such evidence.

The judgment of the trial court is affirmed.

All concur.